```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
------------------------------------------------------------------X
JOHN DOE,                                                         :
                                                                  :    Civil Action No:
                    Plaintiff,                                    :
                                                                  :
            -against-                                             :
                                                                  :
WASHINGTON AND LEE UNIVERSITY,                                    :
                                                                  :
                    Defendant.                                    :
------------------------------------------------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
## FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

Plaintiff John Doe ("Plaintiff"), brings the underlying action for; *inter alia*, Washington & Lee University's ("W&L") violation of Title IX of the Education Amendments of 1972 and declaratory relief for an Order directing that: (i) the outcome and findings made by W&L at Plaintiff's Formal Grievance Hearing be vacated and reversed; (ii) Plaintiff's disciplinary record be expunged from his education file at W&L; (iii) the record of Plaintiff's expulsion from W&L be removed; (iv) any record of Plaintiff's Formal Grievance Hearing be permanently destroyed; and (v) W&L's rules, regulations and guidelines are determined to be unconstitutional as applied.

As further elaborated in the Verified Complaint, sworn to December 12, 2014 (hereinafter the "Verified Complaint"), W&L instituted a disciplinary proceeding against Plaintiff for purported sexual misconduct, and found him responsible, despite the fact that there was no evidence in support of the claim. The procedures used by W&L violated due process, lacked fundamental fairness and violated W&L's own policies.

Procedurally, the instant Motion comes at the initiation of the action, prior to discovery. However, due to education deadlines outside of Plaintiff's control, Plaintiff is compelled to move

this Court for a temporary restraining order and preliminary injunction to allowing Plaintiff to continue his studies at W&L during the pendency of the instant Motion and the underlying action. Insofar as the relief being sought by the Plaintiff is narrow in scope, Plaintiff makes the instant Motion. In support of the Motion, Plaintiff states as follows:

I. **RELIEF REQUESTED**

Plaintiff requests a preliminary injunction:

A. Allowing Plaintiff to continue his studies at W&L during the pendency of the instant Motion and the underlying action; and

B. granting Plaintiff such other and further relief as the Court shall deem just and equitable.

II. **FACTUAL BACKGROUND**

As outlined in the underlying Verified Complaint and the Declaration of Witness 1[1], W&L erroneously found Plaintiff "responsible" for sexual misconduct, with regard to a consensual incident that occurred on February 8, 2014. In reaching its determination, W&L failed to afford due process to Plaintiff and failed to adhere to its own guidelines and regulations; Plaintiff was denied the effective assistance of any advisor; cross-examination of his accuser was effectively denied; Plaintiff was denied being able to call witnesses; exculpatory evidence went ignored; and the hearing tribunal immediately announced its decision upon conclusion of an abbreviated session, reflecting the lack of impartiality and pre-judgment against an accused male student. W&L discriminated against Plaintiff on the basis of his male sex in violation of, among other things, violations of Title IX of the Education Amendments of 1972 and state law. Additionally, W&L's

---

[1] Because Plaintiff is moving to proceed anonymously and revealing Witness 1's name may reveal the name of Plaintiff, Witness 1 is being identified in this declaration as "Witness 1," which is not his real name. Witness 1 is the first witness identified on page 11 of the report attached as Exhibit B to the Verified Complaint. Although Witness 1 is not using his name in his Declaration, Defendant, which prepared the report, is aware of his identity.

guidelines and regulations themselves are insufficient to enable a student to have a fair hearing before an impartial tribunal. Given the lack of evidence, a discriminatory bias against males was required for a conclusion of sexual misconduct to be reached and expulsion ordered.

The evidence overwhelmingly suggests that Plaintiff did not engage in sexual misconduct and that Jane Doe did not believe that Plaintiff did so, until many months after the incident, as a result of others suggesting that this was the case. The evidence that the sexual encounter between the Plaintiff and Jane Doe was consensual includes the following;

- Jane Doe made the allegations eight months after the Incident. *Exhibit[2] B, Page 1*.
- She acknowledged that as a result of being inebriated, her memories of the incident were fuzzy. *Exhibit B, Appendix A, Page 1*.
- Jane Doe initiated kissing with John Doe while in his chair. *Id*.
- Jane Doe took off all of her clothing except her underwear, and Plaintiff also took off his clothing. *Id*.
- Jane Doe got into bed with John Doe. *Id*.
- At no point did Jane Doe state that she "did not want to have sex." *Verified Complaint*, ¶18.
- The next morning, Plaintiff asked Jane Doe if she would like to go out for brunch. Jane Doe declined, but acknowledged that she thought it was a nice gesture, and claimed she said no was because she did not have any other clothes besides for what she wore the night before. *Exhibit B, Appendix A, Page 2*.
- Jane Doe drove Jane Doe home, and as she got out of the car, they exchanged phone numbers. *Id*.
- Plaintiff sent Jane Doe a message on Facebook saying "Hey ummm I don't how to approach this but idk if I have your right cell phone number because I've texted you but got no response but I felt like we had a pretty good connection. [(---) --- ----] is that you?" Jane Doe responded by saying "haha I thought we did as well. it is actually [(---) --- ----]. also, I lost my phone at Das Klub so when I get it back feel free to text me if you like. thanks for reaching out." *Exhibit B, Appendix D*.
- The day after the Incident, Jane Doe spoke to a friend about the incident. Jane Doe indicated that she had sex with Plaintiff, but never indicated that it was not consensual, in fact, Jane Doe said she "had a good time last night." *Exhibit B, Appendix J*.
- One month later, in March 2014, Jane Doe met with Plaintiff and they engaged in consensual sexual intercourse again. *Exhibit B, Appendix A, Page 2*.

---

[2] All Exhibits referenced in this memorandum of law are annexed to the Verified Complaint.

The facts overwhelmingly show that the investigation and hearing was conducted in an unfair manner for reasons including the following;

- At the hearing, John Doe was not allowed to ask questions. Instead, he was allowed to submit written questions, which the chairperson of the Board would ask if he or she deemed it appropriate. *Exhibit A, Page 42*.
- The chairperson of the Board largely failed to do so. *Verified Complaint*, ¶65.
- The hearing was not recorded and there were no witnesses. Instead, the Board relied on the summary of witness statements that were prepared by the investigators. *Verified Complaint*, ¶68.
- Plaintiff was not allowed to discuss the matter with anyone, which prevented him from obtaining evidence relevant to his defense. *Verified Complaint*, ¶63.
- There was no direct testimony of witnesses or even statements made by witnesses. Rather, the Board simply reviewed summaries of witness statements. *Verified Complaint*, ¶69.
- One cannot ask follow-up questions to a written summary, nor can one consider the tone and demeanor in evaluating the truthfulness of the witnesses.
- Moreover, there were no statements under oath. *Verified Complaint*, ¶71.
- Every interview and summary was done by the same person, Lauren Kozak. *Exhibit B*.
- Because she was the Title IX Coordinator, this creates a susceptibility to bias. Because the Title IX Coordinator's job is to prosecute sexual assault cases, it hardly makes her an unbiased person to summarize witness statements.
- Moreover, this particular Title IX Coordinator was appointed at a time when universities are concerned about the United States Department of Education's Office for Civil Rights investigating universities for how they address claims of sexual assault. Thus, there is pressure to find the accused responsible. *Exhibit E*.
- There was no written statement explaining the basis of the Hearing Board's decision. *Exhibit D*.

Without appropriate redress, the Decision will continue to cause irreversible damages to Plaintiff while he attempts to continue on with his life the best that he can. Plaintiff's dismissal right before finals will result in his being unable to obtain credit for this past semester. *Verified Complaint*, ¶91-98. Moreover, the fact that W&L's records indicate that he was expelled makes it unlikely that he will be accepted to another university. *Id*, at ¶96. If a jury determines that the Decision was improper and/or that W&L improperly came to the Decision, the damages Plaintiff will have suffered in the interim cannot be compensated by monetary damages and will render the jury decision ineffectual. As the saying goes, "you can't unring the bell."

As set forth more fully below, the facts indicate that Plaintiff is likely prevail on the merits and the balance of hardships tip in Plaintiff's favor, the temporary restraining order and preliminary injunction should be granted.

## **ARGUMENT**

### III. THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AGAINST W&L

#### A. Legal Standard for Temporary Restraining Order & Preliminary Injunction

The preliminary injunction standard was spelled out by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Under the *Winter* standard, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." 555 U.S. at 20, 129 S.Ct. 365; *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013). Consideration of these factors clearly supports Plaintiff's right to a temporary restraining order and a preliminary injunction to prevent W&L from dismissing Plaintiff prior to the resolution of this action and from interfering with Plaintiff's further educational career and future employment.

#### B. Plaintiff Has Suffered and Will Continue to Suffer Irreparable Harm without Injunctive Relief

"[I]rreparable injury is suffered when monetary damages are ... inadequate." (citation omitted) (internal quotation marks omitted), *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551–52 (4th Cir. 1994), abrogated on other grounds by *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008). There is great value to education for more than just the chance to earn money. As such, monetary compensation would not be able to redress the wrong to Plaintiff.

Plaintiff already completed his studies for this semester and just needs to take finals to obtain credit. *Verified Complaint*, ¶93. Moreover, in the event that Plaintiff seeks to apply to another educational institution, Plaintiff will have a difficult to being admitted on account of his wrongful dismissal based on false claims. *Verified Complaint*, ¶87. Being dismissed from one's university based on false claims is an irreparable harm for which a preliminary injunction should be available. *King v. DePauw University*, 2014 WL 4197507.

C. **Plaintiff Can Establish a Likelihood of Success on the Merits**

Plaintiff has asserted several claims against W&L, each of which Plaintiff is likely to establish successfully. Plaintiff can demonstrate a likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation as to each cause of action stated in the Complaint. In light of same, based on the standards for preliminary injunction and the legal analysis below, the Court should grant Plaintiff's request for a preliminary injunction.

1. **Title IX of the Education Amendments of 1972**

As set forth in the Complaint, W&L failed to follow its own guidelines and procedures in coming to the Decision. More importantly, such guidelines and procedures are in and of themselves fatally flawed and facilitate the complete absence of due process for the accused male student, which is in direct violation of Title IX of the Education Amendments of 1972 and state law. *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ("Looking to these analogous bodies of law, we may safely say that Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline"). Title IX claims filed against Xavier University with similar facts recently survived a motion to dismiss for failure to state a claim. *Wells v Xavier University*, No 1:13CV..00575, 2014 WL 972172, at *9 (S.D. Ohio March 11, 2014).

There are numerous factors to conclude that Plaintiff was denied due process including the following. Plaintiff was denied the ability to cross-examine his accuser; Plaintiff was denied being able to call witnesses; exculpatory evidence of Facebook messages between Plaintiff and Jane Doe was ignored by the hearing panel and the Title IX Coordinator, Lauren E. Kozak; Plaintiff was denied adequate time to prepare for the hearing; the hearing panel immediately announced its decision at the conclusion of an abbreviated session; and the hearing panel failed to set forth a detailed factual finding in its disciplinary determination. *Verified Complaint*, ¶¶ 64-86; *Exhibit A*, W&L's Interim Sexual Harassment and Misconduct Policy dated September 9, 2014, http://go.wlu.edu/OGC/SexualMisconductPolicy. (Last visited December 10, 2014).

Rather than have actual statements of witnesses, the Board Hearing relied on the summary of statements of witnesses. *Exhibit B*. The summaries were all drafted by Lauren Kozak, who is W&L's Title IX Coordinator. *Id*. Any time someone summarizes someone else's words, it has the possibility of being slanted by the perspective of the person doing the summarizing. The fact that the person who did so is W&L's Title IX Coordinator lends greater concern about bias. This is because it is her job to ensure that the United States Department of Education's Office for Civil Rights would not investigate W&L.

Even if one were not to conclude that being a Title IX Coordinator leads to bias, this particular Title IX Coordinator clearly was. The June 9, 2014 letter from the President of W&L announcing that Ms. Kozak was selected as Title IX Coordinator prominently mentioned the fact that "there are reports that as many as 60 colleges and universities are currently under investigation by the U.S. Department of Education's Office for Civil Rights for violations under Title IX." *Exhibit E*.[3] It is clear that Ms. Kozak's job is to make sure that W&L is not similarly investigated.

---

[3] The same letter also indicates indicated that "[s]exual assault runs counter to our institution's fundamental values and has no place in our community." *Exhibit E*. One would hope that punishing people based on false claims of sexual

7

In denying a motion to dismiss in *Wells v Xavier University*, at *4, the Court gave substantial consideration that the university was influenced by its desire to avoid the repercussions of an investigation by the Department of Education's Office for Civil Rights.

A separate reason to assume that Ms. Kozak was biased was that she previously indicated that when someone has regret about a sexual encounter, it amounts to rape. *Witness 1 Decl.*, ¶7-10. This creates the concern that she was applying her own moral standard to the acts that occurred and she was biased by her own moral outrage.

Moreover, Ms. Kozak is not an unbiased investigator because of her role in advising Complainants prior to the investigation. Jane Doe first advised Ms. Kozak of the Incident on October 13, 2014 and indicated that she did not want W&L to go forward with an investigation. *Exhibit B, Page 1*. Jane Doe first indicated that she wanted to go forward with an investigation on October 31, 2014. *Id*. This creates the possibility that there were substantial communications between them prior to the initiation of an investigation, which would have caused Ms. Kozak to pre-judge that Jane Doe was telling the truth. One would certainly expect that in communications between them prior to there being an investigation, Ms. Kozak would not view Jane Doe's statements with the critical eye that one would have as an investigator.

Had the Hearing Board viewed written statements of witnesses rather than Ms. Kozak's summaries, there would have been a better basis to ascertain what happened than relying on written summaries. But even that would not be nearly as effective as having witnesses testify at the hearing in person. Having witnesses appear before the Hearing Board rather than rely on hearsay summaries would be advantageous in that it

> (1) insures that the witness will give his statements under oath -- thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for

---

assault also goes against the institution's fundamental values, although the letter does not indicate that this is a concern of the Defendant.

perjury; (2) forces the witness to submit to cross-examination, <u>the greatest legal engine ever invented for the discovery of truth</u>; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility. (Emphasis added). *California v. Green*, 399 U.S. 149, 158 (1970).

While the hearing was not criminal, so the Sixth Amendment right to remain to confront one's accuser may not apply, the fact still remains that as was stated in *California v. Green* it is the best manner to discover the truth. There is no reason for the Hearing Board not to avail itself to this method. Instead, it chose a method to resolve the matter that is plainly deficient.

Separately, the Board Hearing was held at a time when it was particularly hostile to men accused sexual assault. It is matter that is sufficiently known to be the subject of judicial notice under FRE 201(b)(1) that on November 19, 2014, the day before the Board Hearing, an article was published in Rolling Stone magazine about a purported gang rape at University of Virginia.[4] ("UVA"). The public outrage was such that there was talk about UVA facing serious consequences including loss of donations, further investigation by the United States Department of Education's Office for Civil Rights and students transferring to other schools. In this environment, plainly, no school would want to be seen as sympathetic to men accused of sexual assault.

Given the lack of evidence, a discriminatory bias against males was required for a conclusion of sexual misconduct to be reached and expulsion ordered. W&L's guidelines and procedures reflect the lack of impartiality and pre-judgment against Plaintiff, as an accused male student, from the outset.

Plaintiff has demonstrated a likelihood of success on the merits of his cause of action for W&L's violation of Title IX of the Education Amendments of 1972 and/or has raised serious questions going to the merits to make them a fair ground for litigation.

---

[4] Rolling Stone has since retracted the article. See, http://www.rollingstone.com/culture/features/a-rape-on-campus-20141119 (Last accessed December 10, 2014).

## 2. Breach of Contract & Covenant of Good Faith and Fair Dealing

The legal relationship between a student and a university is one of an implied contract, *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013). "It is generally well accepted that the catalogues, bulletins, circulars, and regulations of a university made available to the matriculant become a part of the contract." *Id*. The contract between a student and a private university should be read liberally in favor of student rights and narrowly in terms of purported "waivers" of contract rights. See Dixon v. Alabama, 294 F.2d 150, 157 (5th Cir. 1961); see also Corso v. Creighton Univ., 731 F.2d 529, 533 (8th Cir. 1984).

On his breach of contract cause of action against W&L, Plaintiff asserts that the parties entered into an express or implied contract via the "Student Handbook" and "W&L Regulations" upon his acceptance of admission to W&L in 2012. See Dixon v. Alabama, 294 F.2d at 157.

In exchange for Plaintiff's payment of tuition, W&L agreed to the following:

> In compliance with Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, and all other applicable non-discrimination laws, Washington and Lee **does not discriminate on the basis of** race, color, religion, national or ethnic origin, **sex**, sexual orientation, age, disability, veteran's status, or genetic information in its educational programs and activities, admissions, and with regard to employment.
>
> **W&L does not discriminate on the basis of sex** in its educational, extracurricular, athletic, or other programs or in the context of employment. *Exhibit A*, Interim Sexual Harassment and Misconduct Policy, p. 4 (emphasis added).

W&L breached the parties' contract by, *inter alia*: (i) failing to afford due process to Plaintiff; (ii) failing to adhere to its own guidelines and regulations; (iii) denying Plaintiff the effective assistance of any advisor; (iv) denying Plaintiff the opportunity to cross-examine his accuser at a hearing; (v) denying Plaintiff the ability to call any witnesses at the hearing; (vi) ignoring exculpatory evidence provided by Plaintiff; (vii) failing to provide Plaintiff with an adequate amount of time to prepare for the hearing; (viii) concluding the investigation, hearing

and deliberations in an abbreviated fashion tantamount to a "rush to justice"; (ix) failure to provide a detailed written decision; (x) discriminating against Plaintiff on the basis of his male sex; (xi) failing to afford Plaintiff a fair hearing before an impartial tribunal; and (xii) meting out a disproportionate sanction of the highest level, namely, expulsion. *See Generally, Verified Complaint*.

It is undisputed that the parties entered into a contract upon Plaintiff's admission as a student at W&L. However, absent a finding that W&L violated an express provision of the parties' contract, Plaintiff has (alternatively) pleaded a cause of action for breach of the covenant of good faith and fair dealing of such underlying contract. In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant. *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 251 Va. 28, 466 S.E.2d 382, 386 (1996).

The Restatement (Second) of Contracts notes that every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement. See Restatement (Second) of Contracts § 205 (1981). A comment to the Restatement states that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." Id.

Part and parcel with Plaintiff's decision to accept admission and make tuition payments to W&L, was his expectation that W&L would, at the very least, uphold its own rules, regulations and guidelines set forth in the Student Handbook and Sexual Harassment and Misconduct Policy and not discriminate against him on the basis of his gender. As set forth above, *supra* Section

III(c)(1), W&L's actions were one-sided toward Jane Doe and predetermined Plaintiff's guilt before his "hearing" even got underway.[5] For the purposes of the instant Motion, Plaintiff's has demonstrated a likelihood of success on his claim that W&L breached the covenant of good faith and fair dealing in the parties' contracts and/or has raised serious questions going to the merits to make them a fair ground for litigation.

   3. **Estoppel & Reliance**

In Virginia, the elements of equitable estoppel are (i) a representation, (ii) reliance, (iii) change of position, and (iv) detriment. The party claiming equitable estoppel must prove each element by clear, precise, and unequivocal evidence. *Dominick v. Vassar*, 235 Va. 295, 367 S.E.2d 487 (1988).

As set forth above, *supra* Section III(c)(1), W&L's actions were one-sided toward Jane Doe and predetermined Plaintiff's guilt before his "hearing" even got underway. Thus, W&L clearly made material misrepresentations of fact when it stated that *"**W&L does not discriminate on the basis of sex** in its educational, extracurricular, athletic, or other programs or in the context of employment. See Interim Sexual Harassment and Misconduct Policy, p. 4 (emphasis added). available at http://go.wlu.edu/OGC/SexualMisconductPolicy (last visited December 10, 2014); see also W&L College Student Handbook 2014-2015, Pages 45 - 53, available at http://www.wlu.edu/document/student-handbook (last visited December 7, 2014).

---

[5] Footnote 1 of W&L's Sexual Harassment and Misconduct Policy indicates that "[w]hen used in this policy, a complainant refers to the individual(s) **who has been the subject of sexual misconduct**." (Emphasis added.) *Exhibit A, Pages 3,46*. It does not define a complainant as in individual who alleges sexual misconduct. This would seem to indicate that W&L assumes every complainant is truthful. As such, this undermines the claim that the accused is receiving a fair hearing.

12

In reliance on W&L's representations, covenants and warranties, Plaintiff accepted admission to W&L and paid tuition. As a result of W&L's discriminatory actions, Plaintiff has sustained significant damages including, without limitation, loss of educational and athletic opportunities, economic injuries, emotional distress, and other direct and consequential damages.

Plaintiff has demonstrated a likelihood of success on the merits of his cause of action for estoppel and reliance and/or has raised serious questions going to the merits to make them a fair ground for litigation.

4. **Negligence**

To state a cause of action for negligence, the plaintiffs must show: (1) that defendant owed plaintiff a "duty, or obligation, recognized by law", (2) a breach of the duty, (3) a "reasonably close causal connection between [defendant's] conduct and the resulting injury" and (4) loss or damage resulting from the breach. See Prosser and Keeton, Torts § 30 at 164-65 (5th ed 1984); *Balderson v. Robertson*, 203 Va. 484, 487-88, 125 S.E.2d 180, 183 (1962).

"[W]hether a legal duty in tort exists is a pure question of law." *Commonwealth v. Peterson*, 286 Va. 349, 356 (Va. 2013); see generally, Prosser and Keeton, Torts § 53 (5th ed). Generally, there are four special relationships, which give rise to a duty to protect: 1) common carriers and their passengers; 2) innkeepers and their guests; 3) possessors of land and the public to whom they open their land; and 4) custodial relationships. See Restatement (Second) of Torts § 314A. The Restatement (Third) of Torts: Liability for Physical Harm § 40, Proposed Final Draft No. 1 (April 6, 2005), has added employer-employee, school-student, and landlord-tenant as additional "special relationships." (Emphasis added).

In light of a school's duty to protect its students from harm, there exist serious policy considerations entitling a student to protection by his or her college from false allegations of sexual

13

misconduct lodged by a fellow student at the same college. Here, W&L owed Plaintiff a duty to protect him from the false allegations of sexual misconduct lodged against him by Jane Joe. The damages that Plaintiff would sustain as a result of validating such false allegations were foreseeable; the range of sanctions for a disciplinary determination of "responsible" for sexual misconduct is outlined in the W&L Student Handbook. See, W&L's Interim Sexual Harassment and Misconduct Policy dated September 9, 2014, http://go.wlu.edu/OGC/SexualMisconductPolicy. (Last visited December 10, 2014).

In validating Jane Doe's false allegations in the face of exculpatory evidence, and ignoring Plaintiff's complaint that Jane Doe was guilty of filing a false complaint against him, W&L came to an erroneous determination of "responsible" against Plaintiff, which resulted in *significant damages to Plaintiff* including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

Plaintiff has demonstrated a likelihood of success on the merits of his cause of action for negligence and/or has raised serious questions going to the merits to make them a fair ground for litigation.

Based on the foregoing, Plaintiff's Motion should be granted because there are serious questions going to the merits of all of the causes of action set forth in the Complaint, the hardships tip in favor of Plaintiff as the student applicant, and W&L will experience no hardship as a result of an injunction.

**(i) The Balance of Equities Weigh in Favor of Plaintiff**

The balance of equities clearly weighs in favor of Plaintiff. If Plaintiff ultimately prevails, he will still not be able to get back the time lost in pursuing his education as a result of the dismissal. This is something which should be a basis for the Court to conclude interim relief is necessary. *King v. DePauw University*, 2014 WL 4197507. There is essentially no harm to W&L in allowing Plaintiff to return to school.

Moreover, Plaintiff already completed the class work for the past semester, which he already paid for, but he is now being precluded for taking final exams to obtain credit for work done. *Verified Complaint*, ¶93. At the very least, Plaintiff should be allowed to take exams for the past semester while this action is pending.

**(ii) The Public Interest Weighs in Favor of Granting an Injunction**

In deciding whether to grant an injunction, the Court is required to consider the impact on nonparties to the suit. *Winter*, 555 U.S. at 20. The only non-party with an interest in this action is Jane Doe. *King v. DePauw University*, 2014 WL 4197507. She is going to be studying in Nepal next semester. *Verified Complaint*, ¶35-37. As such, there is no non-party with an interest in opposing an injunction. *King*, *supra*.

It cannot be argued that W&L would have a concern as to Plaintiff's risk to other students besides Jane Doe for multiple reasons. Firstly, as was previously explained, the claim against Plaintiff was false. Moreover, although Jane Doe made her claim against Plaintiff on October 13, 2014, W&L left it entirely up to her whether to go forward with a formal complaint. *Exhibit B, Page 1*. Jane Doe did not decide to go forward with a formal complaint until October 31, 2014, after learning that Plaintiff was accepted to the Nepal study abroad program. *Exhibit B, Appendix A, Page 3*. If there was a concern by W&L as to a risk to other students, W&L's duty to other

15

students under Title IX should have caused to go forward with an investigation regardless of what Jane Doe desired.

### D. <u>Bond Should Be Waived Because Defendant Will Not Be Harmed</u>

Finally, Plaintiff moves the Court to waive security for any injunction it issues. Federal Rule of Civil Procedure 65(c) provides:

> (c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

Case law is clear that the Court is "vested with wide discretion in the matter of security." <u>Interlink Int'l Fin. Servs., Inc., v. Block</u>, 145 F. Supp. 2d 312 (S.D.N.Y. 2001). Indeed, "in cases were the non-movant has not shown a likelihood of harm, the district court may properly set no bond." <u>Johnson Controls, Inc., v. A.P.T. Critical Sys., Inc.</u>, 323 F. Supp. 2d 525, 541 (S.D.N.Y. 2004); 11A Wright-Miller-Kane, Federal Practice and Procedure 293 (2d ed. 1995) (noting that "the court may dispense with security all together if the grant of an injunction carries no risk of monetary loss to the defendant").

Because the instant injunction carries no risk of monetary loss to W&L, Plaintiff moves this Court to exercise its discretion and waive bond in this case.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff moves this Court for a temporary restraining order and preliminary injunction enjoining W&L from: (i) dismissing Plaintiff during the pendency of the instant Motion and the underlying action; and (ii), such other and further relief as the Court shall deem just and equitable.

Dated: Roanoke, VA
December 13, 2014

By: /s/ David G. Harrison
David G. Harrison, Esq.
The Harrison Firm, PC
5305 Medmont Circle, SW
Roanoke, VA 24018-1120
(540) 777-7100
david@harrisonfirm.us

-and-

Andrew T. Miltenberg, Esq.
Kimberly C. Lau, Esq.
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
klau@nmllplaw.com
(*pro hac vice* to be applied for)

*Attorneys for Plaintiff John Doe*