IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

JOHN DOE,
          Plaintiff,

v.                               Case No.:  6:14-cv-00052-NKM

WASHINGTON AND LEE UNIVERSITY,
          Defendant.

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANT'S MOTION TO DISMISS</u>

      This lawsuit arises from Plaintiff John Doe's apparent dissatisfaction with Washington and Lee University's ("Defendant" or "W&L") finding that he was responsible for violating W&L's Interim Sexual Harassment and Misconduct Policy.  Plaintiff's entire Complaint, however, rests on suppositions and theories that fail to find support in fact or law.  Although Plaintiff attempts to rehash the defense he made at the University's internal disciplinary hearing to the sexual misconduct allegations, this Court is not the proper forum for Plaintiff to retry that disciplinary hearing.  Rather, this Court's review is limited to determining whether W&L followed its sound and legally compliant policies and procedures—a narrow question wholly detached from the underlying merits of Plaintiff's defense.

      Although the Court must take Plaintiff's factual allegations as true, the Court should disregard Plaintiff's unsupported and conclusory allegations that W&L operated with a gender bias or breached any of its legal obligations.  Even accepting the facts as pled in the Complaint, Plaintiff has failed to make the required showing that he was a victim of gender discrimination, or that W&L breached an enforceable agreement.  To the contrary, the facts in Complaint show

that W&L reached the decision at issue through the same thorough and deliberate process that it affords all of its students, regardless of their gender. Although Plaintiff vehemently disagrees with the outcome of his student disciplinary hearing, Plaintiff cannot transform his subjective disappointment into an actionable legal claim. As such, W&L respectfully urges this Court to dismiss plaintiff's suit.

## STATEMENT OF FACTS

On October 13, 2014, W&L officials received a complaint from one its students, referred to herein as Jane Doe, claiming that she had been a victim of sexual assault at the hands of another W&L student, referred to herein as Plaintiff. (Complaint ¶ 38) (hereafter "Compl."). According to Jane Doe, she and Plaintiff engaged in non-consensual sexual intercourse eight months earlier, on February 8, 2014, at Plaintiff's fraternity house. (Compl. ¶¶ 3, 13). Although Jane Doe waited eight months to come forward, Jane Doe confided in at least one other person and sought counseling services before reporting the incident to W&L officials. (Compl. ¶¶ 32-33). Ultimately, Jane Doe decided to go forward with her complaint after she realized that she and Plaintiff were both accepted into the same study abroad program in Nepal. (Compl. ¶¶ 32, 33).

On October 13, 2014, Jane Doe reached out to Lauren Kozak ("Ms. Kozak"), W&L's Title IX Coordinator, to report that she had been sexually assaulted. (Compl. ¶ 33). After receiving the complaint, Ms. Kozak and Jason Rodocker ("Mr. Rodocker"), W&L's Associate Dean of Students, launched an investigation. (Compl. ¶ 42). As part of the investigation, Ms. Kozak requested to meet with Plaintiff to discuss the allegations. (Compl. ¶ 46). During this face-to-face meeting, Ms. Kozak explained to him the basis of the allegation, allowed him to explain his side of the story, and allowed him to submit evidence to support his defense. (Compl. ¶ 47). After interviewing Plaintiff, Ms. Kozak and Mr. Rodocker interviewed nine other

witnesses. (Compl. ¶ 49). After completing the witness interviews, Ms. Kozak and Mr. Rodocker summarized their statements and prepared an investigation report. (Compl. ¶ 53). After completing the initial draft of the report, Ms. Kozak and Mr. Rodocker provided Plaintiff with a copy and allowed Plaintiff to suggest corrections before circulating a final draft. (Compl. ¶ 54). The final report incorporated at least some of Plaintiff's suggested revisions. (Compl. ¶ 57).

After receiving the investigative report, W&L convened a Student Faculty Hearing Board to adjudicate the matter. (Compl. ¶ 55). On November 13, 2014, W&L provided Plaintiff with official written notice of the hearing date and the charges against him. (Compl. ¶ 62). Plaintiff's hearing was held on November 20, 2014, in front a four-person panel, comprised of two students and two professors. (Compl. ¶ 64). Both Plaintiff and Jane Doe were present at the hearing, and Plaintiff was allowed to submit written questions to the panel, some of which were read out loud. (Compl. ¶ 65).

After reviewing all the evidence submitted, the panel found Plaintiff responsible for violating the Policy. (Compl. ¶ 76). In its letter to Plaintiff of November 21, 2014, the panel stated that it:

> thoroughly reviewed the investigative report, appendices, asked follow-up questions of the investigators, and heard directly from the complainant and the respondent. The Board determined by a preponderance of the evidence that the Respondent did not have effective consent, and engaged in non-consensual sexual intercourse in violation of the Interim Sexual Misconduct Policy.

After finding Plaintiff responsible, the panel voted to expel Plaintiff, consistent with the terms of the Policy that has a single sanction of dismissal for this type of complaint. (See id.). In the same November 21 letter, W&L informed Plaintiff of his right to appeal, which Plaintiff

exercised. (See Compl. ¶¶ 76, 87). On appeal, the panel's finding was upheld. (See id.). This action followed on December 12, 2014. (Id).


## LEGAL STANDARD

The standard of review for a Rule 12(b)(6) motion is well established. To survive a motion to dismiss, the plaintiff must come forward with sufficient factual allegations that when taken as true demonstrate a *plausible* claim to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555–558 (2007). While "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008). Thus, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Coles v. Carilion Clinic, 894 F. Supp. 2d 783 (W.D. Va. 2012).

Although the court must accept the plaintiff's factual allegations as true, the reviewing court should disregard the plaintiff's unsupported conclusions or interpretations of law. *See* Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("[The Court] should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.") Ultimately, the 12(b)(6) analysis requires "the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." Id. When this occurs, the court should dismiss the Complaint. See id.

# ARGUMENT

## I.  Plaintiff Does Not Allege Sufficient Facts To Support A Claim Under Title IX

Plaintiff's desire to re-litigate the events that allegedly occurred (or did not occur) on February 8, 2014 is beyond the scope of this lawsuit.  Specifically, it is not the proper role of the Court to "make an independent determination as to what happened between Plaintiff [] and the Complainant" or opine "whether a sexual assault occurred, whether such acts were consensual, or who . . . is credible."  Doe v. Univ. of the South, 687 F. Supp.2d 744, 755 (E.D. Tenn. 2009).  Rather, this Court need only determine whether W&L's policies and procedures comply with Title IX - a narrow question that remains wholly detached from the merits of Plaintiff's defense.  See id.

Although "Title IX bars the imposition of university discipline where gender is a motivating factor," Congress did not intend for Title IX "to impair the independence of universities in disciplining students." Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994).  As a result, "courts should be slow to intrude into the sensitive area of the student-college relationship, especially in areas of curriculum and discipline," and should refrain from "second guess[ing] the professional judgment of academic decision makers."  Lucey v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., No. 2:07-cv-00658, 2009 WL 971667, at *6 (D. Nev. Apr. 9, 2009) (quoting Gukenberger v. Boston Univ., 974 F. Supp. 106, 150 (D. Mass. 1997)).

Every Title IX case requires proof that a defendant such as W&L acted with a gender bias.  Thus, it is not enough for Plaintiff merely to "cast some articulable doubt on the accuracy of the disciplinary proceeding."  Yusuf, 35 F.3d at 715.  Rather, Plaintiff must allege sufficient facts to show that "gender bias was a motivating factor behind the erroneous finding" and show a

"causal connection between the flawed outcome and gender bias." <u>Id</u>. (emphasis added). In other words, "[a]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." <u>Id</u>.; <u>see also</u> <u>Doe v. Univ. of the South</u>, 687 F. Supp. 2d at 756 (holding that the plaintiff must allege sufficient facts to show "the university in question operated with a sexual bias").

Plaintiff advances two theories to support his Title IX claim. First, Plaintiff lodges an as-applied challenge to W&L procedures, claiming that Ms. Kozak and the other members of the Hearing Committee were biased against him. (Compl. ¶108). Second, Plaintiff takes issue with W&L's policies and procedures as a whole, claiming that these procedures disproportionately affect the male student population. (Compl. ¶111). As demonstrated below, however, Plaintiff seeks to equate a possible bias against students accused of sexual assault with an impermissible gender bias. Despite his sweeping allegations, Plaintiff's Complaint remains devoid of any facts showing that W&L was biased against him *because of his gender* as opposed to his status as an accused student. <u>See</u> <u>King v. DePauw Univ.</u>, Civil Action No. 2:14-cv-70, 2014 WL 4197507, at *10 (S.D. Ind., Aug. 22, 2014). As such, Plaintiff's Title IX claim fails as a matter of law and should be dismissed with prejudice.

### A. Ms. Kozak's Alleged Partiality Did Not Affect the Disciplinary Process

Plaintiff first attacks Ms. Kozak's impartiality. Even taking Plaintiff's allegations as true, these allegations fail to show that the resulting disciplinary proceeding was thereby infected with gender bias. This matter was heard by a Hearing Panel that did not include Ms. Kozak. As courts have noted, "[i]n the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." <u>Hill v. Bd. of Trs. of Michigan State Univ.</u>, 182 F. Supp. 2d 621, 628 (W.D. Mich. 2001); <u>see also</u> <u>Gomes v. Univ. of</u>

Maine Syst., 365 F. Supp. 2d 6, 30-31 (D. Me. 2005) ("[I]n examining administrative proceedings, the presumption favors the administrators, and the burden is upon the party challenging the action to produce evidence sufficient to rebut this presumption.")  Plaintiff has failed to allege any facts to overcome this presumption.

Ms. Kozak's alleged statement that "regret equals rape" fails to rebut this presumption. Foremost, Ms. Kozak's statement does not reflect a gender bias.  This statement, for example, could apply equally to men or women who later "regret" a sexual encounter. At most, Ms. Kozak's alleged statement reflects a bias against persons accused of sexual misconduct, not a bias against males.  See Haley v. Virginia Commonwealth Univ., 948 F. Supp. 573 (E.D. Va. 1996) ("[T]hese allegations at best reflect a bias against people accused of sexual harassment and in favor of victims and indicate nothing about gender discrimination."); Gomes, 265 F. Supp. 2d at 31-32; King, 2014 WL 4197507, at *10.

Moreover, Plaintiff has not alleged any facts to show that Ms. Kozak's personal attitudes about sexual misconduct affected her ability to objectively interview witnesses and prepare witness statements, or otherwise had a negative influence on the Hearing Panel.  Ms. Kozak's position as Title IX Coordinator surely did not compromise her ability to properly investigate this matter.  The United States Department of Education ("DOE")'s regulations, for example, envision the Title IX Coordinator taking an active role in receiving and investigating claims of sexual assault.  See DOE Dear Colleague Letter[1] at 7, 22.  Aside from the DOE's regulations, the logic underlying Plaintiff's theory falls flat.   Under Plaintiff's theory, for example, police officers would be precluded from investigating crimes because they might have a potential bias

---

[1] Dear Colleague Letter, Sexual Violence, 2011, *Available at*: http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.

toward preventing or deterring crime. That position, however, lacks any legal support and fails as a matter of law.

Equally fatal to Plaintiff's claims, Ms. Kozak's limited involvement in the process that led to the decision to expel Plaintiff belies any inference that her alleged gender bias—if she had one at all—had a meaningful impact. Specifically, Ms. Kozak's private motivations were insulated by Associate Dean of Students Jason L. Rodocker, who assisted with the investigation. (Compl. ¶46, 49, 53). Moreover, Ms. Kozak was one-step removed from the final decision to expel Plaintiff. A Hearing Panel of four independent individuals made the decision to expel Plaintiff. (Compl. ¶64). Although Plaintiff claims that witness statements prepared by Ms. Kozak tainted the process, the Hearing Panel received and reviewed additional evidence, including Plaintiff's in-person explanation of the events that transpired at his fraternity house and thereafter. (Compl. ¶76). The fact that the Panel ultimately found the other evidence in the record more persuasive than Plaintiff's testimony does not equate to gender bias.

Judge Kiser's discussion in <u>Clement v. Satterfield</u> is instructive on this point. See <u>Clement v. Satterfield</u>, 927 F. Supp. 2d 297 (W.D. Va. 2013). In <u>Clement</u>, the plaintiff alleged that he was removed from his position as vice president at a local farmer's market due to his race. <u>See id.</u> at 309-10. Specifically, the president of the farmer's market received several complaints that the plaintiff had sexually harassed various vendors at the farmer's marker. <u>Id</u>. After investigating the complaints and collecting written statements, the president—who was a voting member of the Board—brought the issue to the Board. <u>Id</u>. After the Board voted to remove the plaintiff, the plaintiff claimed that the president's private racial animus tainted the investigation and subsequent removal, relying in part on the president's prior racial statement that he "didn't want too many [black people] there." <u>Id</u>. at 308. Judge Kiser, however, rejected

the plaintiff's argument, holding that, "[the] [d]efendant's private motivations were insulated by two other Board members who reviewed the [sexual assault] allegations and voted to remove [the plaintiff]." Id. at 310. Judge Kiser reasoned that "[t]here [was] no evidence that [the defendant] solicited or procured the allegations, that the Board had reason to doubt the complaints, or that the other Board members were complicit in Defendant's 'orchestrated' removal of [the plaintiff]." Id. at 310; see also Yusuf, 35 F.3d 715 (noting that Title VII case law is instructive in the Title IX context).

The court in Bleiler v. Coll. of Holy Cross reached the same conclusion in the student disciplinary context. See Bleiler, Civil Action No. 11-11541, 2013 WL 4714340, at *11-14 (D. Mass. Aug. 26, 2013). There, the plaintiff alleged that the Director of Student Conduct was biased against him, relying on the Director's prior statements to the media that sexual misconduct was "very unreported" and that the "College should be concerned about 'what we can do to make victims of sexual misconduct feel comfortable to come forward, to feel supported.'" Id. at *11. The court, however, rejected the plaintiff's claim. After acknowledging the well-settled principle that the "alleged prejudice of university hearing bodies must be based upon more than mere speculation and tenuous inferences," the court held that, "[t]he allegations of [the Director's] views as expressed in the media are not relevant to the issue of whether the Hearing Panel (of which [the director] was not a deliberating member) was biased against [the plaintiff] in reaching its decision . . . ." Id. at *11-12 (emphasis added). Similarly, the Sixth Circuit found in a similar challenge to a university's disciplinary process that the Director of Judiciaries' prior statement that "men cannot be violated" did not taint the disciplinary process where the Director did not participate in the ultimate decision to expel the plaintiff. Mallory v. Ohio Univ., 76 Fed. App'x 634, 639 (6th Cir. 2003), cert. denied 124 S. Ct. 811 (U.S. 2003).

As in the cases discussed above, Plaintiff has failed to allege sufficient facts to show that Ms. Kozak acted with a gender bias, or that her purported bias compromised the overall disciplinary process. As a result, Plaintiff fails to show that W&L's decision to expel him was the result of gender bias and violates Title IX.

**B.**     **Plaintiff Alleges No Facts To Support His Claim That the Hearing Panel Held A Gender Bias**

Plaintiff's conclusory allegations that individual members of the Hearing Panel were biased are equally unsupported. Beyond Plaintiff's bare assertion that "all panelists possessed an inherent bias," Plaintiff fails to allege any facts to support this conclusory charge. (See Compl. ¶ 64). Plaintiff, for example, does not allege that any of the panelists ever openly expressed any bias against Plaintiff or male students generally. See e.g., Mallory, 76 Fed. App'x 634 at 639 (dismissing action where there were no allegations that any of the voting members had ever indicated or stated that they were biased).

In the absence of direct evidence, Plaintiff tries to rely on a letter from W&L's President to claim that W&L fostered an anti-male environment. (See Compl. ¶ 83). In the letter, the President stressed the importance of complying with Title IX and noted that "sexual assault runs counter to our institution's fundamental values and has no place in our community." (Compl. ¶ 83, 84). W&L's commitment to its legal and community obligations, however, does not evidence discrimination. The court in Gomes rejected a similar argument. There, the plaintiff claimed that the hearing panel was biased because one of the members volunteered at a local rape counseling center. The court, however, cogently reasoned that:

> [I]t is difficult to take seriously Plaintiffs' claims of bias. After all, [the panelist's] volunteer activity has been directed against sexual assault, which is a crime and violation of the Code. There is not exactly a constituency in favor of sexual assault, and it is difficult to image a proper member of the Hearing Committee not firmly against it. **It is another matter altogether to assert that, because**

10

> **someone is against sexual assault, she would be unable to be a fair and neutral judge as to whether a sexual assault had happened in the first place.**

Gomes, 365 F. Supp. 2d 6, 31-32 (D. Me. 2005) (emphasis added).  To argue that W&L's efforts to provide a safe environment for its students evidences gender bias strains credulity and fails as a matter of law.[2]

Plaintiff's reliance on a Rolling Stone article detailing the University of Virginia's handling of sexual assault cases is equally unavailing.  Foremost, there are no allegations that the panelists relied on, referenced, or were even aware of the article before Plaintiff's hearing.  The timing is purely coincidental and probative of nothing.  Moreover, the bulk of Plaintiff's complaints (*i.e.* the charges, the investigation, and the written summaries) predated the Rolling Stone article, undermining any inference that the article played any substantive role in his case.  Even if a panel member had, in fact, read the article, the article depicted a gang-rape that bore no similarity to Plaintiff's charges.  Thus, it remains enigmatic how an article about another institution could have affected the outcome of Plaintiff's case.  At most, the article and its aftermath might have encouraged W&L and other universities to continue take charges of sexual assault seriously.  That motivation, however, fails to evidence a gender bias.  W&L's strong stance against sexual assault amounts to no more than a potential bias against students who are responsible for sexual assault, not to male students generally.  See e.g., Haley v. Virginia Commonwealth Univ., 948 F. Supp. 573 (E.D. Va. 1996) (holding that a bias against students accused of sexual assault does not equate to gender bias).  As such, Plaintiff has failed to state sufficient facts to support his conclusion that the Hearing Panel was biased.

---

[2] Moreover, Plaintiff fails to allege that any of the panelists even read the letter from W&L's President.

### C. The Allegedly Flawed Procedures Fail to Evidence Gender Bias

In his final attempt to muster sufficient factual support for his Title IX claim, Plaintiff alleges that male students at W&L are prosecuted under a "presumption of guilt," and that Jane Doe received "favorable treatment" during the hearing. (See Compl. ¶¶ 110-111, 118). Specifically, Plaintiff points to a number of procedures that he believes are flawed (*i.e.* the inability to personally cross-examine witnesses, the inability to ask questions out loud, and the fact that the complainant and the accuser were separated by a partition). (Compl. ¶68-75). These generalized complaints about the process, however, fail to evidence gender bias.

Foremost, Plaintiff does not allege that female students are treated differently when they are charged with sexual misconduct, nor that accused female students are afforded additional procedural protections. See Doe v. Holy Cross, 687 F. Supp. 2d at 756-57. Rather, Plaintiff's allegations rest on the flawed assumption that Plaintiff and Jane Doe should have been treated the same during the hearing—a theory explicitly rejected in Haley v. Virginia Commonwealth Univ, 948 F. Supp. 573 (E.D. Va. 1996). In Haley, the plaintiff argued that Virginia Commonwealth University operated under a gender bias because the school allowed the complainant's attorney to ask questions during the hearing, but refused to allow the accused student's lawyer to participate. See id. at 577. The court, however, rejected this claim, holding that a university's procedures—even if they constitute a "practice of railroading accused students"—fail to show gender bias because accused students, male and female alike, are subjected to the same procedures. Id at 579. Similarly, Plaintiff's allegations that Jane Doe was given additional protections "is like comparing apples and oranges, for [the complainant] and [the accused student] were not similarly situated at the proceedings." Id.; see also Doe, 687 F.

Supp. 2d at 756-57 (dismissing Title IX claim where the plaintiff failed to allege a female comparator who received more favorable treatment).

The recent decision in <u>King v. DePauw Univ.</u>, Civil Action No. 2:14-cv-70, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014) reinforces this conclusion. There, the court held that, "[i]n the absence of any evidence that [the college] has, or would, treat a female student accused of sexual misconduct less favorably than it has treated its male students in that position, it is unclear how [the plaintiff] could prevail on his Title IX claims. In other words, it would not be enough for [the plaintiff] to convince a jury that [the complainant] received more favorable treatment from [the college] than he did; he would have to prove that the disparity in treatment was due to his gender, rather than his status as a student accused of sexual misconduct." <u>Id</u>. at *10.

To the extent Plaintiff claims that only men are presumed guilty, Plaintiff has failed to allege any other examples to support his claim. Rather, Plaintiff attempts to extrapolate his perceived negative experience to other cases. His subjective dissatisfaction with the process, however, fails to constitute the pattern of discriminatory decision-making necessary to state a claim under Title IX. As the court stated in <u>Mallory</u>, "one case by an individual who was subjectively dissatisfied with a result does not constitute a 'pattern of decision-making'. . . as a basis for finding [gender] bias." <u>Mallory</u>, 76 Fed. Appx. at 640; <u>see also Doe</u>, 687 F. Supp. 2d at 756. As such, Plaintiff fails to state a claim upon which relief can be granted for his Title IX claim.

**D.  Plaintiff's Claim That W&L's Guidelines "Disproportionately Affect The Male Student Population" Fails As A Matter of Law**

Plaintiff also alleges that W&L's guidelines and regulations "are set up to disproportionately affect the male student population of the W&L community." (Compl. ¶ 117).

Specifically, Plaintiff claims that "the higher incidence of female complainants of sexual misconduct" evidences this institutional bias. (See Compl. ¶ 117). Courts, however, have repeatedly rejected this argument. Most recently, the court in <u>King</u> (supra) held that,

> King has not pointed to anything that persuades the Court that King's gender was a motivating factor in any of DePauw's actions. King points to the fact that out of the twelve previous sexual misconduct charges identified by DePauw, all of them involved accusations against male students and ten of those students were found responsible. But DePauw is not responsible for the gender makeup of those who are accused by other students of sexual misconduct, and the fact that a vast majority of those accused were found liable might suggest a bias against accused students, but says nothing about gender. King's argument really seems to be that DePauw's actions have had a disparate impact on male students, but the Court is unaware of any authority that permits a disparate impact claim under Title IX.

<u>King</u>, 2014 WL 4197507, at *10; <u>see also</u> <u>Dempsey v. Bucknell Univ.</u>, 2012 WL 1569826 (M.D. Pa. May 3, 2012) (holding that higher levels of male prosecutions for sexual misconduct fails to support a claim for gender bias under Title IX). Plaintiff's claims—which track those made in <u>King</u> and <u>Bucknell</u>—suffer from the same flaws. Accordingly, Plaintiff's Title IX claim should be dismissed with prejudice.

## II.     Plaintiff's Breach of Contract Claim Fails As A Matter of Law

### A.     W&L's Sexual Misconduct Policy Is Not An Enforceable Contract

With respect to his breach of contract claims, Plaintiff fails to allege the existence of an enforceable contract. Although Plaintiff's relies on W&L's Interim Sexual Harassment and Misconduct Policy, this policy does not constitute a contract under Virginia law. <u>See</u> <u>Brown v. Rector & Visitors of the Univ. of Va.</u>, Civil Action No. 3:07–CV–00030, 2008 WL 1943956, at *6 (W.D. Va. May 2, 2008) (Moon, J.). In <u>Brown</u>, this Court held that the University of Virginia was not contractually bound by statements in its graduate handbook, reasoning that the handbook—which explicitly disclaimed that it was not to be construed as a contract between the

student and the University—was "at most, an illusory contract because of the illusory nature of its terms." Id. As a result, this Court held that the graduate handbook did not form a binding contract under Virginia law. See id.

Other courts agree. See e.g., Abbas v. Woleben, Civil Action No. 3:13–CV–147, 2013 WL 5295672, at *4 (E.D. Va. Sept. 19, 2013) (finding that university handbooks and catalogs do not form a contract when the terms are not binding on the university); Davis v. George Mason Univ., 395 F.Supp.2d 331, 337 (E.D. Va. 2005) (finding university course catalog to be an unenforceable illusory contract because while it purports to promise specified performance by the university, the performance is entirely optional because of the catalog's disclaimer that it may change its terms or requirements at any time); Truell v. Regent Univ. School of Law, No. 2:04:cv716, 2006 WL 2076769, at *6-7 (E.D. Va. July 21, 2006) (same); Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 454 (4th Cir. 2004) (holding that disclaimer in employee manual prevented the formation of an enforceable contract).

The facts in this case compel the same result. Here, W&L's Student Handbook, which incorporates the Interim Sexual Harassment and Misconduct Policy, contains an explicit disclaimer that the Handbook and its attendant policies are not intended to form a binding contract between W&L and its students.[3] On the first page of the Handbook, it states—in bolded terms—that:

> ***The policies of Washington and Lee University are under continual examination and revision. This Student Handbook is not a contract; it merely presents the policies in effect at the time***

---

[3] This Court has the power to look beyond the complaint and review documents essential to Plaintiff's claims. See Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014) (holding that court "may properly consider documents attached to complaint or motion to dismiss, as long as they are integral to complaint and authentic.") W&L's Student Handbook remains integral to Plaintiff's claim and maintains the hallmarks of authenticity. To the extent Plaintiff relies in part on the Handbook as a contract, the entire Handbook is relevant to whether an enforceable agreement existed. As such, this Court should consider its effect on Plaintiff's claims.

> *of publication and in no way guarantees that the policies will not change.*[4]

As a result, the Handbook integrating the Interim Sexual Harassment and Misconduct Policy does not constitute a valid, enforceable contract under Virginia law.

Even absent an express disclaimer, several courts have found that sexual assault policies outlined in student handbooks do not form enforceable contracts. In <u>Ruegsegger v. Bd. of Regents of Western New Mexico Univ.</u>, for example, the court held that provisions in the student handbook detailing sexual assault investigations and disciplinary procedures were "guidelines" and did not "constitute the terms of an implied contract [or] contractually guarantee the rights asserted by the Plaintiff." <u>Ruegsegger</u>, 141 N.M. 306, 313-314 (2006). Thus, "[e]ven though the Student Handbook sets out a general framework of policies, we are not persuaded that the language contractually obligates [the university] to conduct any specific type of investigation, to provide support services, or to impose specific discipline." <u>Id</u>.

Other courts have reached the same conclusion. <u>See e.g.</u>, <u>Giuliani v. Duke Univ.</u>, Civil Action No. 1:08-cv-502, 2009 WL 1408869, *3-4 (M.D.N.C. May 19, 2009) (holding that "student policy manuals are not binding contracts" and the plaintiff's reliance on policy manuals as evidence of a contract was a "swing and a miss"); <u>Mosby-Nickens v. Howard Univ.</u>, 864 F. Supp. 2d 93, 98-100 (D.D.C. 2012) ("[T]he [Graduate School Rules and Regulations] appears to be intended as a means for the university to communicate its expectations regarding academic conduct to its students. It does not appear that the university intended to bind itself to the handbook's provisions."); <u>Cook v. Talladega Coll.</u>, 908 F. Supp. 2d 1214, 1224 (N.D. Ala. 2012) (holding that student handbook was not a binding contract); <u>Gerald v. Locksley</u>, 785 F. Supp. 2d 1074, 1141-1145 (D.N.M. 2011) (same). As a result, W&L's Interim Sexual Harassment and

---

[4] *Available at:* <u>http://go.wlu.edu/StudentHandbook</u> (emphasis in original).

Misconduct Policy fails to form an enforceable contract and Plaintiff's contract claim fails a matter of law.

**B. Plaintiffs Has Not Alleged Sufficient Facts to Show That W&L Materially Breached The Policy**

Even if the Interim Sexual Harassment and Misconduct Policy constitutes an enforceable contract, Plaintiff has not alleged sufficient facts to show that W&L breached such policy. Specifically, "[a] court's review under a breach of contract theory for violations of a university's established disciplinary procedures is limited to whether the procedures used were arbitrary, capricious, or in bad faith." See Lucey v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., No. 2:07-cv-00658, 2009 WL 971667, at *6 (D. Nev. Apr. 9, 2009). Although Plaintiff uses in conclusory fashion the terms "arbitrary and capricious" in his Complaint, this Court should disregard Plaintiff's unsupported, boilerplate legal conclusions. Accord Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("[The Court] should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.")

In fact, the Complaint actually shows that W&L maintained and followed a legally compliant policy. As alleged in the Complaint, W&L "immediately" began investigating Jane Doe's allegations once she made a complaint of sexual misconduct. (Compl. ¶ 42). As part of the investigation, Ms. Kozak interviewed Plaintiff and provided him the opportunity to explain his side of the story. (Compl. ¶ 46-47). Ms. Kozak then interviewed nine other witnesses. (Compl. ¶ 49). After completing the investigations and reviewing the Facebook evidence that Plaintiff submitted, Ms. Kozak and Mr. Rodocker prepared an investigation report. (Compl. ¶ 53). Ms. Kozak and Mr. Rodocker then gave Plaintiff the opportunity to review and suggest changes to the report, some of which were incorporated into the final report. (Compl. ¶ 54).

Following the investigation, Plaintiff was given written notice of the charges against him and was provided a hearing. (Compl. ¶ 62). An independent Hearing Panel, comprised of two professors and two students, heard Plaintiff's case. (Compl. ¶ 64). Both Plaintiff and Jane Doe were present at the hearing. (Compl. ¶ 65). During the hearing, Plaintiff was allowed to submit written questions to the Panel, some of which were read out loud. (Compl. ¶ 65). After reviewing all the evidence submitted, the Panel voted to find Plaintiff responsible, and notified Plaintiff in writing of the outcome of the proceeding. (Compl. ¶ 76). In that same letter, the Panel informed Plaintiff of his right to appeal, which Plaintiff exercised. (Compl. ¶ 87). On appeal, the Panel's finding was upheld. Id.

Far from being arbitrary, these procedures reflect a deliberate and principled decision-making process. Although Plaintiff inundates this Court with a wish-list of desired procedures, Plaintiff mischaracterizes and overstates the obligations institutions of higher education have in the disciplinary context. Courts have stated repeatedly that "[a] school is an academic institution, not a courtroom or administrative hearing room." Bd. of Curators v. Horowitz, 435 U.S. 78, 88 (1978). Even in the context of public institutions, where the Constitution defines the requisite level of due process, due process only "requires that appellants have the right to respond; their rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." Nash v. Auburn Univ., 812 F.2d 655 (11th Cir. 1987). To that effect, "courts staunchly resist the suggestion that school discipline hearings should emulate criminal trials." Hammock ex rel. Hammock v. Keys, 93 F.Supp.2d 1222, 1229 (S.D. Ala. 2000); see also Dixon, 294 F.2d at 159 (a full-dress judicial hearing is not required). Thus, "[w]hile a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classrooms into courtrooms." Jaksa v. Regents of the

Univ. of Mich., 597 F. Supp. 1245, 1250 (E.D. Mich. 1984); see also Gorman v. Univ. of Rhode Island, 837 F.2d 7, 14-16 (1st Cir. 1988). Notably, the court in Jaksa explains that part of the public policy reasoning behind such a result is that "[f]ormalizing hearing requirements would divert both resources and attention from the educational process." Jaksa at 1250, citing Jackson v. Dorrier, 424 F.2d 213, 217 (6th Cir.) cert. denied, 400 U.S. 850, 27 L.Ed. 2d 88, 91 S. Ct. 55 (U.S. 1970).

W&L's policies and procedures meet and exceed this standard in every respect. Although the case law in the private school context is somewhat sparse, courts in the public school context—where schools must comport with Constitutional requirements—have overwhelmingly rejected Plaintiff's specific procedural objections:

- Using a partition to separate the victim from her alleged perpetrator does not compromise the proceeding. See Gomes, 365 F. Supp. 2d at 27-28.

- Excluding testimony on the victim's prior sexual history is not unfair. See *Gomes*, 365 F. Supp. 2d at 25-26.

- Students do not have a general right to pre-trial discovery or other pre-hearing materials. See Gomes, 365 F. Supp. 2d at 18-19.

- Students do not have the right to cross-examine their accusers. See Nash v. Auburn University, 812 F.2d 665, 664 (11th Cir. 1987); see also Craig v. Selma City School Bd., 801 F. Supp. 585, 593 (S.D. Ala. 1992); see also Dear Colleague Letter, pg. X ("strongly discourag[ing] schools from allowing the parties personally to question or cross-examine each other during the hearing. Allowing an alleged perpetrator to question an alleged victim directly may be traumatic or intimidating, thereby possibly escalating or perpetuating a hostile environment.")

- Students do not have the right to be represented by counsel. See e.g., Johnson v. Temple Univ., 2013 WL 5298484, *10 (E.D. Pa. Sept. 19, 2013).

- Students are not entitled to a finding of fact or an explanation of the panel's reasoning. See e.g., Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 642 (6th Cir. 2005).

- Students are not entitled to an appeal where the underlying hearing was fair. See e.g., Flaim, 418 F.3d at 642.

Thus, even taking Plaintiff's facts as true, W&L's procedures align with—and exceed—traditional notions of fundamental fairness. As such, Plaintiff fails to state a claim for breach of contract, and this Court should dismiss Plaintiff's claim.

### III. Plaintiff's Good Faith and Fair Dealing Claim Requires Plaintiff to Show the Existence of An Enforceable Contract And Therefore Fails

Plaintiff's claim for breach of the covenant of good faith and fair dealing falls with his breach of contract claim. Specifically, Plaintiff must show the existence of a contractual relationship to support such a claim. See Stoney Glen, LLC v. Southern Bank & Trust Co., 944 F. Supp. 2d 460, 466 (E.D. Va. 2013). For the reasons discussed above, however, Plaintiff has failed to show an enforceable contract. As a result, this claim must likewise be dismissed. See Luther v. Wells Fargo Bank, N.A., Civil Action No. 4:13-cv-00072, 2014 WL 6451667, at *5 (W.D. Va. Nov. 17, 2014) (Urbanski, J.) (holding that plaintiff must first state a viable breach of contract claim to support a claim for breach of the implied covenant of good faith and fair dealing); see also Frank Brunckhorst Co., LLC, 542 F. Supp. 2d 452, 465 (E.D. Va. 2008) ("Because [the plaintiff's] claim for breach of contract is legally insufficient to withstand dismissal under Fed.R.Civ.P. 12(b)(6), [the plaintiff] cannot make a valid claim for the breach of an implied covenant contained in the contract."); L&E Corp. v. Days Inns of Am., Inc., 992 F.2d

55, 59 n. 2 (4th Cir. 1993); <u>Johnson v. D&D Home Loans Corp.</u>, Civil Action No. 2:07-cv-204, 2007 WL 4355278, *3 (E.D. Va. Dec. 6, 2007); <u>Giuliani</u> (supra), 2009 WL 1408869, at *4.[5]

## IV. Virginia Law Does Not Recognize Plaintiff's Claims for "Estoppel" and/or "Reliance"

Virginia law also forecloses Plaintiff's "estoppel and reliance" claims. (*See* Compl. ¶¶ 137-146.) It is axiomatic that Virginia law does not recognize a cause of action for promissory estoppel. <u>See</u> <u>W.K. Schafer Associates, Inc. v. Cordant, Inc.</u>, 254 Va. 514, 521 (1997) ("We hold that promissory estoppel is not a cognizable cause of action in the Commonwealth and we decline to create such a cause of action."); <u>see also</u> <u>Mongold v. Woods</u>, 278 Va. 196 (2009) ("[I]n 1997, we observed that such a cause of action had never been held to exist in the Commonwealth and expressly declined to create such a cause of action. We have not altered that position."); <u>accord</u> <u>Nguyen v. CAN Corp.</u>, 44 F.3d 234, 240 (4th Cir. 1995) ("Virginia courts have repeatedly refused to adopt the doctrine of promissory estoppel as part of Virginia's common law.")

Although Plaintiff labels his claims as "estoppel and reliance," Plaintiff's claims are merely a promissory estoppel claim by any other name. <u>See</u> <u>Browning v. Federal Nat'l Mortg. Assoc.</u>, Civil Action No. 1:12-cv-00009, 2012 WL 1144613 (W.D. Va. Apr. 5, 2012) (construing a reliance claim as a "promissory estoppel" claim and dismissing the claim). Even if Plaintiff's claims are legally distinct from a "promissory estoppel" claim, courts in this district have specifically rejected these types of claims. <u>See</u> <u>Guardian Pharm. of Eastern NC, LLC v. Weber City Healthcare</u>, Civil Action No. 2:12-cv-00037, 2013 WL 277771, *7 (W.D. Va. Jan. 24, 2013) ("[U]nder Virginia law, no independent cause of action for detrimental reliance exists.");

---

[5] Even if Plaintiff has alleged an enforceable contract, Plaintiff's Complaint is devoid of any allegations that W&L acted dishonestly or in bad faith—a required element under Virginia law. <u>See e.g.</u>, <u>Stoney Glen, LLC v. Southern Bank & Trust Co.</u>, 844 F.Supp.2d 460 (E.D. Va. 2013).

<u>Nasser v. WhitePages, Inc.</u>, Civil Action No. 5:12-cv-00097, 2014 WL 55783, *1-2 (W.D. Va. Jan. 7, 2014) (holding that "equitable estoppel is not a valid cause of action.").  As such, Defendant respectfully asks this Court to dismiss Plaintiff's Fourth Cause of Action.


**V.      Plaintiff Fails To Articulate An Appropriate Standard of Care To Support A Negligence Claim**

To support a negligence claim under Virginia law, "there must be a legal duty, a breach thereof, and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence." <u>Jordan v. Jordan</u>, 220 Va. 160, 162, (1979).  Plaintiff, however, has failed to articulate what -- if any -- duty W&L owes him.  As the court noted in <u>McFadyen v. Duke Univ.</u>, "the university-student relationship does not impose an actionable duty of care on administrators or advisors in the discharge of their academic functions."  <u>McFayden</u>, 786 F. Supp. 2d 887, 998 (M.D.N.C. 2011), <u>rev'd in part on other grounds</u>, 703 F.3d 636 (4th Cir. 2012).  To that effect, courts have dismissed negligence claims where -- as here -- the plaintiff does not articulate a particularized standard of care or provide the legal authority from which the purported legal duty arises.  <u>See e.g.</u>, <u>Keerikkattil v. Hrabowsi</u>, Civil Action WMN-12-2016, 2013 WL 5368744, *9 (D. Md. Sept. 23, 2013) (dismissing negligence action where the plaintiff failed to allege a specific standard of care during misconduct hearings, holding, *inter alia*, that purported violations of Title IX cannot form the basis of a negligence action); <u>DeCecco v. Univ. of South Carolina</u>, 918 F. Supp. 2d 471, 502 (D.S.C. 2013) (dismissing negligence claim against university because the plaintiff failed to articulate the university's legal standard of care in sexual assault investigations).  As such, Plaintiff has failed to properly plead a negligence claim.[6]

---

[6] To the extent that this Court finds an enforceable contract, the source of duty rule bars a negligence action where the legal duty arises from a contractual agreement. <u>See e.g.</u>, <u>Augusta Mut. Ins. Co. v. Mason</u>, 645 S.E.2d 290 (Va. 2007).

Assuming that Plaintiff has alleged a legally cognizable duty, Plaintiff merely repackages his breach of contract and Title IX claims as a negligence claim. (See Compl. ¶ 145-147). For the reasons stated above, however, Plaintiff has failed to allege any facts to support his claims that W&L was biased, held a discriminatory animus, or acted in an arbitrary or capricious manner. As such, Plaintiff's negligence claim must also fail. See e.g., Gomes, 365 F. Supp. 2d at 43-44 (noting that the plaintiff's negligence claim was subsumed by his due process challenge).

**CONCLUSION**

For the reasons stated above, Defendant respectfully requests this Court to dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

Washington and Lee University

By counsel:

*s/ Robert Craig Wood*
Robert Craig Wood
McGuireWoods LLP
Court Square Building
310 Fourth Street, N.E., Suite 300
Charlottesville, VA 22903-1288
434-977-2558 (direct line)
434-980-2274 (fax)
cwood@mcguirewoods.com

## CERTIFICATE OF SERVICE

I, R. Craig Wood, certify that on this 12 day of January, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff by electronically serving his counsel of record, and also by electronic mail.


/s/ Robert Craig Wood
Robert Craig Wood