# EXHIBIT A

# Washington and Lee University

Home > General Counsel > Code of Policies > Discrimination, Harassment, And Retaliation > Interim University Policy on Prohibited Discrimination, Harassment and Retaliation Other Than Sex > Interim Sexual Harassment and Misconduct Policy

# Interim Sexual Harassment and Misconduct Policy

**Approved By:** President; Endorsed by Board of Trustees

**Issued:** 8/25/2014

**Responsible Office:** Title IX/Section 504 Coordinator

**Related Policies:**

- Interim University Policy on Prohibited Discrimination, Harassment and Retaliation Other Than Sex
- Title IX at Washington and Lee University
- Title IX Organization Chart and Reporting Flow Chart

**Additional References:**

- Quick Reference Guide for Washington and Lee Faculty and Staff
- Information for Faculty and Staff: Sexual Misconduct
- Resources Contact Information

# I. Purpose and Statement of Intent

Sexual harassment, sexual assault, domestic and dating violence, stalking, and retaliation of any form are an affront to human dignity and fundamentally at odds with the values of Washington and Lee University. The University community has a responsibility to maintain an environment free from

harassment. It is committed to taking all appropriate steps to eliminate prohibited conduct, prevent its recurrence, and address its effects. The University is committed to fostering a climate free from sexual misconduct through clear and effective policies, a coordinated education and prevention program, and prompt and equitable procedures for resolution of complaints that are accessible to all. The University encourages all members of our community to participate in creating a safe, welcoming, and respectful environment on campus. Ultimately, each member of the community is expected to assume responsibility for his or her conduct, to report behaviors that may violate this policy, and to take reasonable and prudent actions to prevent or stop acts of sexual misconduct.

This policy prohibits a broad continuum of behaviors, all of which constitute a form of sexual or gender-based harassment or discrimination, sexual assault or relationship violence. In general, *sexual assault* means physical sexual acts perpetrated without effective consent. In general, *relationship violence* means any act of violence or threatened act of violence against a person who is, or has been involved in, a sexual, dating, domestic, or other intimate relationship with that person. Prohibited conduct that may violate this policy includes sexual harassment, sexual assault, sexual exploitation, domestic and dating violence, retaliation, and stalking. This document may use the term "sexual misconduct" to refer to any or all of those prohibited behaviors.

The University will respond according to the severity or pervasiveness of the offense and the threat it poses to the community. Individuals who are found responsible may face disciplinary sanctions up to and including dismissal and/or termination of employment.

The University will not tolerate retaliation against an individual who makes a report, participates in a resolution process, or assists as a bystander to stop sexual misconduct. Retaliation, whether actual or threatened, destroys the sense of community and trust that is central to a quality environment. Community members engaging in retaliation will be subject to disciplinary action, whether such acts are implicit or explicit, or committed directly or indirectly.

The University will make every reasonable effort to stop retaliation immediately, to conduct a complete and thorough investigation of alleged acts of retaliation in a timely manner, to provide remedies to victims of retaliation, and to sanction the perpetrators of retaliation as appropriate.

This policy provides community members with the structure, tools, and guidance to assist those who have experienced or been affected by sexual misconduct, whether as a complainant, a respondent, or a third party.[1]

# II. Scope of Policy

This policy applies to all members of the Washington and Lee community, including students, faculty, staff, consultants, volunteers, vendors, and others engaged in business with the University.

Visitors to and guests of Washington and Lee University are both protected by this policy and subject to its restrictions. Visitors and guests may initiate grievances for violations of this policy committed against them by members of the W&L community. Visitors and guests may also be permanently forbidden from entering any part of the campus or having contact with University members.

All Washington and Lee community members have a responsibility to adhere to University policies and to local, state, and federal law. Because this policy is based on shared values, it sets a range of expectations for University students, employees, and volunteers. Therefore, this policy applies to behaviors that take place on the campus, at University-sponsored events, and in the course of University-related travel and off campus programs, such as (but not limited to) domestic academic programs, domestic field trips, domestic spring term coursework, study-abroad programs, internship programs, work-related conferences, etc. This policy may also apply to other off campus conduct, when such conduct is likely to have a substantial adverse effect on, or poses a threat of danger to, any member of the University community or the University.

This policy may be applied to conduct that takes place from the time a person accepts enrollment as a student or accepts employment or volunteer duties; including academic term breaks and periods between terms and semesters; and continues until the student withdraws or graduates or until the employee ceases employment or a volunteer ceases to act on behalf of the University.

This policy also applies to behavior conducted online, including via e-mail. Blogs, web page entries, social media sites, and other similar online postings are in the public sphere and are not private. These postings can subject a

community member to allegations of conduct violations. The University does not regularly search for this information but may take action if and when such information is brought to the attention of University officials.

# III. Notice of Non-Discrimination and Statement of Compliance with Title IX

## A. Notice of Non-Discrimination

Washington and Lee University is committed to establishing and maintaining a safe and nondiscriminatory educational and work environment in which all individuals are treated with respect and dignity. In compliance with Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, and all other applicable non-discrimination laws, Washington and Lee does not discriminate on the basis of race, color, religion, national or ethnic origin, sex, sexual orientation, age, disability, veteran's status, or genetic information in its educational programs and activities, admissions, and with regard to employment.

This policy addresses all forms of sexual discrimination, including sexual harassment, sexual assault, stalking, and relationship violence. It prohibits these behaviors against W&L community members of any gender, gender identity, gender expression, or sexual orientation. This policy also prohibits failure to provide equal opportunity in admissions, employment, or athletics; reports of these types of discrimination should also be brought to the attention of a Title IX officer and will be addressed as appropriate.

W&L does not discriminate on the basis of sex in its educational, extracurricular, athletic, or other programs or in the context of employment. Sex discrimination is prohibited by Title IX of the Education Amendments of 1972, a federal law that provides:

**No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.**

Sexual harassment is also prohibited under Title VII of the Civil Rights Act of 1964, Virginia state law, and other applicable statutes.

The University, as an educational community, will promptly and equitably respond to reports of sexual harassment, sexual assault, domestic and dating violence, stalking, and retaliation in order to eliminate the misconduct, prevent its recurrence, and address its effects on any individual or the community.

# B. The Role of the Title IX Coordinator

The President has appointed Lauren E. Kozak to serve as the University's Title IX Coordinator. She will be informed of all reports of sexual misconduct and will oversee the University's review, investigation, and resolution of those reports to ensure the University's compliance with Title IX and other applicable laws, and the effective implementation of this policy.

The Title IX Coordinator is:

- Responsible for the oversight of the resolution of all reports of sexual misconduct involving students, staff, and faculty as well as volunteers and third parties;
- Knowledgeable and trained in University policies and procedures and relevant state and federal laws;
- Available to advise any individual, including a complainant, a respondent, or a third party, about the courses of action available at the University, both informally and formally, and in the community;
- Available to provide assistance to any University employee regarding how to respond appropriately to a report of sexual misconduct;
- Responsible for monitoring compliance with all procedural requirements, record keeping and time frames outlined in this policy;
- Responsible for overseeing training, prevention and education efforts, and reviews of climate and culture; and
- Responsible for conducting or overseeing investigations of complaints against students.

The Title IX Coordinator is supported by Amy Diamond Barnes, Assistant Title IX Coordinator for Employment and Executive Director of Human Resources (also known individually as a "Title IX Officer"), and Elizabeth Knapp, Assistant Title IX Coordinator for Gender Equity in Athletics. Other individuals or offices

that may be involved in addressing complaints may include the Director of Public Safety; the Vice President for Student Affairs and Dean of Students or a professional staff member of Student Affairs; Human Resources; the Provost's Office; and the Vice President for Finance and Administration and Treasurer. The individuals who will address complaints will be limited to a small circle of individuals who need to know in order to implement this policy.

Inquiries or complaints concerning the application of Title IX may be referred to the University's Title IX Coordinator and/or the United States Department of Education:

- **Title IX Coordinator**
  Lauren E. Kozak
  540.458.4055
  kozakl@wlu.edu
- **U.S. Department of Education**
  Office for Civil Rights
  800.421.3481
  ocr@ed.gov

# C. Links to Relevant Federal Laws

Additional information about the federal laws referenced in this policy-Title IX; the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act); the Campus Sexual Violence Elimination Act (Campus SaVE Act); and the Family Educational Rights and Privacy Act (FERPA)-can be found at the following links:

- **Title IX**
  http://www.dol.gov/oasam/regs/statutes/titleix.htm
  http://www2.ed.gov/about/offices/list/ocr/docs/tix_dis.html
- **Clery Act**
  http://cleryact.info/home.html
- **FERPA**
  http://www.ed.gov/policy/gen/guid/fpco/ferpa/index.html
- **Campus SaVE Act**
  http://www.cleryact.info/campus-save-act.html

# IV. Privacy and Confidentiality

The University is committed to protecting the privacy of all individuals involved in a report of sexual misconduct. In any report, the University will make every effort to protect the privacy of all individuals involved in a manner consistent with the need for a careful assessment of the allegation and any necessary steps to eliminate the harassment, prevent its recurrence, and address its effects.

Privacy and confidentiality have distinct meanings under this policy.

## Privacy

Privacy means that information related to a report of misconduct will be shared only with a limited circle of individuals-those University employees who need to know in order to assist in the active review, investigation, or resolution of the report. While not bound by confidentiality, these individuals will be discreet and respect the privacy of all individuals involved in the process. W&L will involve only those University employees who have a legitimate need to know about individual conduct complaints pursuant to the Family Educational Rights and Privacy Act (FERPA) and will share information accordingly.

## Confidentiality

Confidentiality means that information shared by an individual with designated campus or community professionals cannot be revealed to any other person without express permission of the individual. Those professionals include medical providers, mental health providers, ordained clergy, and off-campus rape crisis counselors, all of whom have privileged confidentiality that the law recognizes. These individuals are prohibited from breaking confidentiality unless there is an imminent threat of harm to self or others, or unless the conduct involves suspected abuse of a minor under the age of 18.

Community members wishing to seek completely confidential assistance may speak with counselors in the Counseling Center, health service providers in the Student Health Center, local health providers, off-campus rape crisis resources, counseling resources available to employees through the Employee

Assistance Program, or members of the clergy, all of whom will maintain confidentiality.

# Reporting on Campus

It is important to understand that any University employee who is not designated as a confidential resource cannot maintain the confidentiality of a report or information concerning an alleged violation and all employees are instructed to share a report of sexual misconduct with a Title IX Coordinator.

# Release of Information

If a report of misconduct indicates a serious and immediate threat to the campus community, the University will issue a timely notification to the community to protect its health or safety. The University may also share non-identifying information about reports received in aggregate form, including data about outcomes and sanctions. The University will never release the name of the complainant to the general public without the express consent of the complainant or as otherwise permitted or required by law.

Pursuant to and required by the Clery Act, anonymous statistical information must be shared with Public Safety. Annual Clery reporting to the U.S. Department of Education is required of educational institutions for certain offenses that have been reported at campus locations or certain off campus locations controlled by the institution. The information contained in the Clery report tracks the number of Clery-reportable offenses occurring at such locations and does not include the names or any other identifying information about the persons involved in the incident.

Washington and Lee reserves the right to notify the parents or guardians of students regarding any conduct situation, particularly disciplinary probation, loss of housing, suspension, and dismissal, in accordance with law.

All University proceedings are conducted in compliance with the requirements of Title IX, the Clery Act, the Campus Sexual Violence Elimination Act (Campus SaVE Act), FERPA, state and local law, and University policy. Links to these federal laws are provided in Section III of this policy.

No information shall be released from proceedings under this policy except as required or permitted by law and by University policy.

# V. Prohibited Conduct

W&L prohibits and will not tolerate sexual misconduct in any form. Such violations are subject to any combination of sanctions, including suspension, dismissal, or termination of employment.

The following behaviors fall under the broad definition of sexual misconduct and are prohibited.

- Sexual Harassment
- Non-Consensual Sexual Intercourse
- Non-Consensual Sexual Contact
- Sexual Exploitation
- Relationship Violence
  - Domestic Violence
  - Dating Violence
- Stalking
- Retaliation

# A. Sexual Harassment

Sexual harassment is any unwelcome conduct of a sexual nature (sexual advances, request for sexual favors, or other unwanted verbal or physical conduct of a sexual nature); or unwelcome conduct based on sex, sexual orientation, gender identity, or gender expression, when one or more of the following conditions are present:

- Submission to the unwelcome conduct is an expressed or implied condition of an individual's employment, evaluation of academic work, or any aspect of a University program or activity; or
- Refusal to submit to unwelcome conduct resulted in a tangible academic or employment detriment; or
- The unwelcome conduct unreasonably interferes with an individual's work or academic performance, or creates an intimidating or hostile academic

or work environment under both an objective (a reasonable person's view) and subjective (the complainant's view) standard.

Sexually harassing behaviors differ in type and severity and can range from verbal harassment to unwelcome physical contact. A wide range of behaviors falls within the general definition of sexual harassment. Key determining factors are that the behavior is unwelcome, is gender-based or conduct of a sexual nature, and is reasonably perceived as offensive and objectionable under both a subjective and objective assessment of the conduct.

A single, isolated incident of sexual harassment alone may create a hostile environment if the incident is sufficiently severe. The more severe the conduct, the less need there is to show a repetitive series of incidents to create a hostile environment, particularly if the harassment is physical. The determination of whether an environment is hostile must be based on all the circumstances. These circumstances could include, but are not limited to:

- The frequency of the conduct;
- The nature and severity of the conduct;
- Whether the conduct was physically threatening;
- Whether the conduct was directed at more than one person;
- Whether the conduct arose in the context of other discriminatory conduct;
- Whether a statement is a mere utterance of an epithet that engenders offense in an employee or a student or offends by mere discourtesy or rudeness; and/or
- Whether the conduct deserves the protections of academic freedom.

Sexual harassment:

- May be blatant and intentional and involve an overt action, a threat, or a reprisal, or may be subtle and indirect, with a coercive aspect that is unstated.
- Does NOT have to include intent to harm, be directed at a specific target, or involve repeated incidents.
- May be committed by anyone, regardless of gender, age, position, or authority. While there is often a power differential between two persons, perhaps due to differences in age, social, educational, or employment relationships, harassment can occur in any context.

- May be committed by a stranger, an acquaintance, or someone with whom the complainant has an intimate or sexual relationship.
- May be committed by or against an individual or may be a result of the actions of an organization or group.
- May occur by or against an individual of any sex, gender identity, gender expression, or sexual orientation.
- May occur in the classroom, in the workplace, in residential settings, over electronic or social media (including the Internet, telephone, and text), or in any other setting.
- May be a one-time event or part of a pattern of behavior.

May be committed in the presence of others or when the parties are alone. Examples of conduct that may constitute sexual harassment as defined above may include a severe, persistent, or pervasive pattern of unwelcome conduct that includes one or more of the following:

- Physical conduct:
  - Unwelcome touching, sexual/physical assault, impeding, restraining, or blocking movements
  - Unwanted sexual advances
- Verbal conduct:
  - Making or using derogatory comments, epithets, slurs, or humor
  - Verbal abuse of a sexual nature; graphic verbal commentaries about an individual's body; sexually degrading words used to describe an individual; suggestive or obscene letters, notes, or invitations
  - Offensive comments of a sexual nature, including persistent or pervasive sexually explicit statements, questions, jokes, or anecdotes
- Visual conduct:
  - Leering; making sexual gestures; displaying suggestive objects or pictures, cartoons, or posters in a public space or forum
  - Severe, persistent, or pervasive visual displays of suggestive, erotic, or degrading, sexually oriented images that are not pedagogically appropriate
- Written conduct: letters, notes or electronic communications, including social media, containing comments, words, or images described above
- Quid pro quo conduct:

- ○ Direct propositions of a sexual nature between those for whom a power imbalance or supervisory or other authority relationship exists
- ○ Offering employment benefits in exchange for sexual favors
- ○ Making submission to sexual advances an actual or implied condition of employment, work status, promotion, grades or letters of recommendation, including subtle pressure for sexual activity, an element of which may be repeated requests for private meetings with no academic or work purpose
- Making or threatening reprisals after a negative response to sexual advances

# B. Non-Consensual Sexual Intercourse

Having sexual intercourse with another individual without effective consent.

*Sexual intercourse* includes vaginal or anal penetration, however slight, with a body part (e.g., penis, tongue, finger, hand) or object, or oral penetration involving mouth-to-genital contact.

# C. Non-Consensual Sexual Contact

Having sexual contact with another individual without effective consent.

*Sexual contact* includes any intentional, non-accidental, and non-consensual touching of the intimate parts of another, causing another to touch one's intimate parts, or disrobing or exposure of another without permission. Intimate parts may include the breasts, genitals, buttocks, groin, mouth, or any other part of the body that is touched in a sexual manner.

# D. Sexual Exploitation

Taking advantage of the sexuality of another person without effective consent or in a manner that extends the bounds of effective consensual sexual activity without the knowledge of the other individual for any purpose, including sexual gratification, financial gain, personal benefit, or any other non-legitimate purpose. Examples of sexual exploitation include:

- Observing another individual's nudity or sexual activity or allowing another to observe consensual sexual activity without the knowledge and consent of all parties involved;
- Non-consensual streaming of images, photography, video, or audio recording of sexual activity or nudity, or distribution of such without the knowledge and consent of all parties involved;
- Prostituting another individual;
- Inducing incapacitation for the purpose of making another person vulnerable to non-consensual sexual activity.

# E. Relationship Violence-Physical Harm and Intimidation

*Relationship violence* is often referred to as dating violence, domestic violence, or intimate partner violence.

*Domestic violence* means a felony or misdemeanor crime of violence against a person committed by:

- A current or former spouse or intimate partner of the victim;
- A person with whom the victim shares a child in common;
- A person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner;
- A person similarly situated to a spouse of the victim under the domestic or family violence laws of Virginia;
- Any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of Virginia.

*Dating violence* means violence committed by a person:

- Who is or has been in a social relationship of a romantic or intimate nature with the victim; and
- Where the existence of such a relationship shall be determined based on (1) the length of the relationship; (2) the type of relationship; and (3) the frequency of interaction between the persons involved in the relationship.

Relationship violence may involve one act or an ongoing pattern of behavior. Relationship violence affects individuals of all genders, gender identities,

gender expressions, and sexual orientation, and does not discriminate by racial, social, or economic background.

The University will not tolerate relationship violence of any form. The University recognizes that sexual harassment, sexual assault, stalking, and retaliation all may be forms of relationship violence when committed by a person who is or has been involved in a sexual, dating, or other social relationship of a romantic or intimate nature with the complainant.

# F. Stalking

*Stalking* means engaging in a course of conduct directed at a specific person that would cause a reasonable person to:

- Fear for his or her safety or the safety of others; or
- Suffer substantial emotional distress.

Stalking includes the concept of cyber-stalking, in which electronic media such as the Internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact are used to pursue, harass, or to make unwelcome and unsolicited contact with another person.

Examples of stalking may include:

- Unwelcome and repeated visual or physical proximity to a person;
- Repeated oral or written threats;
- Unwelcome/unsolicited written communication, including letters, cards, e-mails, instant messages, and messages on online bulletin boards;
- Unwelcome/unsolicited communications about a person, their family, friends, or co-workers; or
- Implicitly threatening physical conduct or any combination of these behaviors directed toward an individual person.

# G. Retaliation

Retaliation is any act or attempt to retaliate against, or seek retribution from, any individual or group of individuals involved in the investigation or resolution of a report, or engaging in bystander intervention of sexual misconduct. Retaliation can take many forms, including abuse or violence, threats, and

intimidation. Any individual or group of individuals, including a complainant or respondent, engaging in retaliation will be held accountable.

Actions are considered retaliatory if they

1. are in response to a good faith disclosure of real or perceived University-related misconduct, participation in an investigation of University-related misconduct, engaging in bystander intervention of sexual misconduct, and
2. have a materially adverse effect on the working, volunteering, academic, or University-controlled living environment of an employee, volunteer or student; or if the faculty member, employee, volunteer or student can no longer effectively carry out his or her University responsibilities.

# VI. Understanding Consent: Force, Coercion, Incapacitation, and Alcohol

## A. Consent

Individuals who choose to engage in sexual activity of any type with each other must first obtain consent. Consent is demonstrated through mutually understandable words and/or actions that clearly indicate a willingness to engage freely in sexual activity.

Additional Guidance about Consent:

- Consent to one form of sexual activity does not constitute consent to engage in all forms of sexual activity.
- Consent consists of an outward demonstration indicating that an individual has freely chosen to engage in sexual activity. Consent may not be inferred from silence, passivity, lack of resistance, or lack of an active response alone. A person who does not physically resist or verbally refuse sexual activity is not necessarily giving consent.
- A verbal "no" is a clear demonstration of the lack of consent.
- Either party may withdraw consent at any time. Withdrawal of consent should be outwardly demonstrated by words or actions that clearly

indicate a desire to end sexual activity. Once withdrawal of consent has been expressed, sexual activity must cease.

- Individuals with a previous or current intimate relationship do not automatically give either initial or continued consent to sexual activity. Even in the context of a relationship, there must be mutually understandable communication that clearly indicates a willingness to engage in sexual activity.

- The responsibility of obtaining consent rests with the individual who initiates sexual activity. Prior to engaging in sexual activity, each participant should ask himself or herself the question, "Has the other person consented?" If the answer is "No" or "I'm not sure," then consent has not been demonstrated and does not exist. An individual who initiates sexual activity should be able to explain the basis for his/her belief that consent existed.

- Consent is not effective if it results from the use or threat of physical force, intimidation, or coercion, or any other factor that would eliminate an individual's ability to exercise his or her own free will to choose whether or not to have sexual contact. See "Force" and "Coercion" for further discussion.

- An individual who is physically incapacitated from alcohol or other drug consumption (voluntarily or involuntarily) or is asleep, unconscious, unaware, or otherwise physically helpless is considered unable to give consent. See "Incapacitation" for further discussion.

- In the Commonwealth of Virginia, the age of majority is 18. Under state law, consent cannot be given for any individual under the age of 18 to participate in sexual activity with an individual over the age of 18. In addition, consent can never be given by minors under the age of 13.

# B. Force

Force is the use or threat of physical violence or intimidation to overcome an individual's freedom of will to choose whether or not to participate in sexual activity. There is no requirement that a party resists the sexual advance or request, but resistance will be viewed as a clear demonstration of non-consent.

# C. Coercion

Coercion is the use of unreasonable and persistent pressure to compel another individual to initiate or continue sexual activity against an individual's will. Coercion can include a wide range of behaviors, including intimidation, manipulation, threats, and blackmail. Coercion may be emotional, intellectual, psychological, or moral. A person's words or conduct are sufficient to constitute coercion if they wrongfully impair another individual's freedom of will and ability to choose whether or not to engage in sexual activity. Examples of coercion include threatening to disclose another individuals' private sexual information related to sexual orientation, gender identity, or gender expression, and threatening to harm oneself if the other party does not engage in the sexual activity. Coercing an individual into engaging in sexual activity violates this policy in the same way as physically forcing someone into engaging in sexual activity.

# D. Incapacitation

An individual who is incapacitated lacks the ability to make informed, rational judgments and cannot consent to sexual activity. Incapacitation is defined as the inability, temporarily or permanently, to give consent because an individual is mentally and/or physically helpless, asleep, unconscious, or unaware that sexual activity is occurring.

Where alcohol or other drugs are involved, incapacitation is a state beyond drunkenness or intoxication. The impact of alcohol and other drugs varies from person to person; however, warning signs that a person may be approaching incapacitation may include slurred speech, vomiting, unsteady gait, odor of alcohol, combativeness, or emotional volatility.

In other words, a person may be considered unable to give valid consent due to incapacitation if the person cannot appreciate the *who, what, where, when, why,* and/or *how* of a sexual interaction.

Evaluating incapacitation also requires an assessment of whether a respondent should have been aware of the complainant's incapacitation based on objectively and reasonably apparent indications of impairment when viewed from the perspective of a sober, reasonable person in the respondent's position.

An individual who engages in sexual activity with someone the individual knows or reasonably should know is incapable of giving knowing consent (e.g., to understand the *who, what, when, where, why* or *how* of their sexual interaction) is in violation of this policy.

## 1. Alcohol or Other Drugs

In general, the University considers sexual contact while under the influence of alcohol or other drugs to be risky behavior. Alcohol and drugs impair a person's decision-making capacity, awareness of consequences, and ability to make informed judgments. It is especially important, therefore, that anyone engaging in sexual activity be aware of the other person's level of intoxication. If there is any doubt as to the level or extent of the other individual's intoxication or impairment, the prudent course of action is to forgo or cease any sexual contact or activity.

The perspective of a sober, reasonable person will be the basis for determining whether a respondent should have been aware of the incapacitation of the complainant.

Being intoxicated or impaired by drugs or alcohol is never an excuse for sexual misconduct, and does not diminish one's responsibility to obtain informed and freely given consent.

# VII. Prohibited Relationships by Persons in Authority

The faculty-student relationship is one of trust in the institution and the faculty member, who has the professional responsibility for being a mentor, educator, and evaluator. Faculty-student and employee-student romantic and/or sexual attention, interaction, or relationships, even mutually consenting ones, interfere with a student's unfettered pursuit of learning and the integrity of the academic and workplace environment.

Consensual relationships (defined in the Consensual Relationship Policy as a romantic and/or sexual relationship to which both parties have given their consent) between University employees and undergraduate students are prohibited.

Consensual relationships between law students and all employees within the Law School are prohibited.

Consensual relationships between law students and non-Law School employees of the University who have the potential to directly impact the student's academic or professional status or development now or in the future are prohibited.

Consensual relationships between law students and University employees who believe they are exempted by the preceding sentence are strongly discouraged. Such employees who nevertheless choose to engage in a consensual relationship with a law student may not be defended or indemnified by the University if difficulties in the relationship arise (including, but not limited to, student claims of sexual harassment against the University or employee).

Failure to fully comply with the University's Consensual Relationship Policy could subject the person in authority to disciplinary action, up to and including dismissal from employment by the University.

Any individual may file a complaint alleging harassment or bias, including an aggrieved party outside the relationship affected by the perceived harassment or bias. Retaliation against persons who report concerns about consensual relationships is prohibited and constitutes a violation of this policy.

# VIII. Resources for Complainants and Respondents

A first step for any complainant or third-party witness may be choosing how to proceed following an incident of sexual misconduct. The University provides two distinct institutional resources:

- **Confidential Resources do not involve notifying the University of the incident unless the complainant requests such action.**
- **Reporting Resources notify the University of the incident and begin the Title IX assessment and ultimate resolution of the report through remedies or investigation and imposition of any sanctions.**

It is also important to note that emergency medical, W&L Public Safety, and/or local law enforcement assistance are available both on and off campus. All individuals are encouraged to contact law enforcement and seek medical treatment as soon as possible following an incident that poses a threat to one's safety or physical well-being.

The University is committed to treating all members of the community with dignity, care, and respect. Any individual affected by sexual misconduct, whether as a complainant, a respondent, or a third party, will have equal access to support consistent with their needs and available University resources.

The University recognizes that deciding whether to make a report and choosing how to proceed can be difficult decisions. The University encourages any individual who has questions or concerns to seek the support of campus and community resources. These professionals can provide information about available resources and procedural options and assistance to either party in the event that a report and/or resolution are pursued. Individuals are encouraged to use all available resources, regardless of when or where the incident occurred.

# A. Emergency and Community Resources

The first priority for any individual should be personal safety and well-being. The University encourages all individuals who have experienced sexual misconduct to seek assistance by contacting W&L Public Safety, calling 911, contacting local law enforcement, and/or visiting a medical facility immediately after an incident of sexual misconduct.

All individuals are encouraged to make a prompt report to law enforcement and/or to seek immediate medical treatment in response to an incident in order to address immediate safety concerns and to allow for the preservation of evidence and an immediate investigative response. The University will assist in these reporting options by arranging for or providing transportation to the hospital, coordinating with local law enforcement (including assisting with filing a police report and obtaining a protective order), and informing a complainant about the University's resources and complaint processes.

**In the event of an emergency, individuals may obtain 24-Hours support from any of the following**:

- **Lexington Police Department** - 540.462.3705
- **Rockbridge County Sheriff's Office** - 540.463.7328
- **W&L Public Safety** - 540.458.8999
- **W&L Student Health** - 540.458.8401
- **Carillion Stonewall Jackson Hospital** - 540.458.3300
- **Dean of Students Office / Dean on Call** - 540.458.8754
- **Campus Public Safety / Dean on Call 24/7** - 540.458.8999
- **Project Horizon** - 540.463.2594
  (Domestic Violence and Sexual Assault)
- **Augusta Health** - 800.932.0262
  (This is the closest hospital if a sexual-assault evidence-collection exam is desired. Public Safety can assist with transportation. Coordinate through the Student Health Center.)

# B. Confidential Resources and Support

For individuals who are seeking confidential consultation, several resources provide confidential support, both on campus and in the local community. The trained professionals designated below can provide counseling, information, and support under legally protected confidentiality. Because these relationships involve privileged conversations, these confidential resources will not share information about a patient/client (including whether or not that individual has received services) with the Title IX Coordinator or any other employee of the University without the individual's express written permission. They may, however, submit non-identifying information about the incident for purposes of making a statistical report under the Clery Act.

Students wishing to obtain confidential support or resources on campus are encouraged to contact the University Student Health Center and Counseling. This center is staffed by medical, psychiatric, and psychological professionals who are bound by separate laws of confidentiality and will not share the report with other members of the University under most circumstances (excluding, for example, circumstances that give rise to an imminent safety concern).

**Any of the following:**

- **W&L Student Health Center**
  Counseling Services - 540.458.8590
  Health Services - 540.458.8401
- **Project Horizon** - 540.463.2594
  (Domestic Violence and Sexual Assault)
- **Employee Assistance Program (EAP)** - 800.992.1931
  In addition to Project Horizon, employees wishing to make a confidential
  report are encouraged to contact the Employee Assistance Program,
  which is staffed by individuals who are bound by the same rules of
  confidentiality.
- **Virginia State Domestic & Sexual Violence Hotline (VSDS)** -
  800.838.8238 (24-hour hotline)
  The Virginia State Domestic & Sexual Violence Hotline can provide
  resources for survivors. VSDS is under no obligation to notify the
  University when providing services to students.
  http://www.dss.virginia.gov/community/dv/
- **National Domestic Violence Hotline (NDV)** - 800.799.7233 (SAFE)
  The National Domestic Violence Hotline can provide advocacy, resources,
  referral, and legal assistance to victims of relationship violence. The
  hotline is under no obligation to notify the University when providing
  services to students.
  www.thehotline.org
- **Rape, Abuse and Incest National Network (RAINN)** - 800.656.4673
  A confidential, anonymous national sexual assault hotline.
  www.rainn.org

# IX. Reporting

The University encourages all individuals to seek assistance from a medical
provider and/or law enforcement immediately after an incident of sexual
violence or relationship violence, whether or not the individual plans to pursue
criminal action. This is the best option to ensure preservation of evidence and
to begin a timely response by law enforcement and/or the University.

The University supports victims of sexual misconduct and encourages all
individuals or third-party witnesses to report any incident to the University,
and to law enforcement if it involves potential criminal conduct.

Making a report means telling a Reporting Resource (someone in authority, see Campus Reporting Resources, IX (B)) what happened-in person, by telephone, in writing, or by e-mail. At the time a report is made, a complainant does not have to decide whether or not to request any particular course of action, nor does a complainant need to know how to label what happened. Choosing to make a report, and deciding how to proceed after making the report, can unfold over time. The University provides support to each individual in making these important decisions, and to the extent legally possible, will respect an individual's autonomy in deciding how to proceed. In this process, the University will balance the individual's interest with its obligation to provide a safe and non-discriminatory environment for all members of the University community.

Any individual who reports sexual misconduct can be assured that the University will investigate all reports and resolve them in a fair and impartial manner. All individuals involved can expect to be treated with dignity and respect. In every report, the University will make an immediate assessment of any risk of harm to the University or to the broader campus community and will address those risks, including taking interim measures to provide for the safety of the individual and the campus community.

# A. Reporting to Law Enforcement

The University encourages complainants to pursue criminal action for incidents of sexual misconduct that may also be crimes under state criminal statutes. The University will assist a complainant, at the complainant's request, in contacting local law enforcement; filing a report; and obtaining a protective order. The University will cooperate with law enforcement agencies if a complainant decides to pursue the criminal process.

The University's policy, definitions, and burden of proof may differ from Virginia criminal law. A complainant may seek resolution through the University's complaint process, may pursue criminal action, may choose one but not the other, or may choose both. Neither law enforcement's determination whether or not to prosecute a respondent nor the outcome of any criminal prosecution determine whether sexual misconduct has occurred under this policy. Proceedings under the University's Interim Sexual

Harassment and Misconduct Policy may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus.

- **Lexington Police Department** - 540.462.3705
- **Rockbridge County Sheriff's Office** - 540.463.7328
- **Virginia State Police** - 804.674.2000

# B. Campus Reporting Resources

The University is committed to providing a variety of welcoming and accessible means so that all instances of sexual misconduct will be reported. All W&L community members should report all incidents of sexual misconduct or retaliation directly to the Title IX Coordinator or Assistant Title IX Coordinator for employment.

The University recognizes that a student or employee may choose to report to any employee of the University. For example, a student may choose to confide in an associate dean, a resident assistant, a faculty member, a director, or a coach. Similarly, an employee may choose to confide in a supervisor or a colleague. No W&L employee may promise confidentiality (except in Counseling and Health Services), and all W&L employees are expected to share such information with the Title IX Coordinator or Assistant Title IX Coordinator for Employment.

W&L has identified certain groups of employees as "Responsible Employees" for purposes of complaints of sexual misconduct. These employees are the same as those identified as "campus security authorities" in the University's Campus Security Report. As indicated below, certain of these employees have the authority to redress complaints of sexual misconduct. The others identified have a specifically designated duty to report incidents of sexual violence or other student sexual misconduct or are individuals who students could reasonably believe have the authority to redress or duty to report on campus. Responsible Employees must refer reports of misconduct under these policies and guidelines to a Title IX Coordinator, and information brought to their attention is not confidential. They will be trained on how to identify sexual misconduct and on their duties:

The following Responsible Employees have the authority to redress complaints of sexual violence or sexual misconduct:

- Title IX Coordinator and Assistant Title IX Coordinator
- Student Resources: Identified at
  http://go.wlu.edu/OGC/ResourcesContactInfo
- Employee Resources: Identified at
  http://go.wlu.edu/OGC/ResourcesContactInfo
- Director and Officers of Public Safety

The following additional Responsible Employees must report complaints of sexual violence or student sexual misconduct to a Title IX Coordinator (*Note: These positions are also identified as Responsible Employees because students may reasonably believe them to have authority to redress or duty to report such complaints*):

- Assistant Director of Campus Recreation
- Athletic Director, Associate and Assistant Athletic Directors
- Athletic Team Coaches, Assistant Coaches, and Athletic Trainers
- Director of Sustainability Initiatives and Education
- Directors of Legal Clinics
- Faculty and staff accompanying students on off-campus programs or other University-related trips, within and outside the United States
- Undergraduate Faculty Department Chairs and Program Chairs
- Law School Director of Academic Success
- Resident Assistants/Advisers
- Shepherd Program-Coordinator for Student Service Leadership and Research, Associate Director of Community-Based Learning, and Co-Curricular Service Coordinator

Students and all other employees should report information about any incident of sexual misconduct to any of the Responsible Employees or to the reporting options listed below.

# All Campus Reporting Resources

**Lauren E. Kozak, Title IX Coordinator**
Elrod University Commons 307
Phone: 540.458.4055
Email: kozakl@wlu.edu

Coordinates prompt and equitable responses to reports of sexual misconduct by eliminating the misconduct, preventing its recurrence, and addressing the effects.

### Amy D. Barnes, Title IX Assistant Coordinator for Employment

Office of Human Resources
Two South Main 109
Phone: 540.458.8920
Email: abarnes@wlu.edu

The Executive Director of Human Resources, as the Assistant Title IX Coordinator for Employment, can assist faculty and staff requesting information, resources, and reporting options, and can facilitate informal resolution of complaints where appropriate. Human Resources also can assist faculty and staff with requesting workplace interim measures during the investigation or other resolution of a complaint.

### Office of Student Affairs

Elrod Commons 242
Phone: 540.458.8754

Students can report incidents directly to the Vice President for Student Affairs and Dean of Students or to a member of the professional staff. The office can assist with informal resolution of complaints where appropriate, as well as assisting with academic concerns, changes in housing, or other interim measures. The office can also connect students to on- and off-campus resources.

### Office of Public Safety

Heating/Cooling Plant, Denny Circle
Phone: 540.458.8999
Available 24 hours a day/7 days a week/365 days a year

Available to receive reports of incidents of sexual misconduct. Also available to arrange or provide transportation to the hospital or local law enforcement, and can reach the Student Affairs Dean on Call at any time.

### Elizabeth Knapp, Assistant Title IX Coordinator for Gender Equity in Athletics

Washington Hall 205

Phone: 540.458.8867
Email: knappe@wlu.edu

For complaints about gender equity in W&L athletic programs.

# C. Anonymous Reporting

Any individual may make an anonymous report concerning incidents of sexual misconduct. An individual may report the incident without disclosing his or her name, identifying the respondent, or requesting any action. Depending on the extent of information available about the incident or the individuals involved, however, the University's ability to respond to an anonymous report may be limited. The Anonymous Reporting Form can be found at: http://go.wlu.edu/ReportCrime

The Title IX Coordinator or the Assistant Title IX Coordinator will receive the anonymous report and will determine any appropriate steps, including individual or community remedies as appropriate and in compliance with all Clery Act obligations.

# D. Bystanders

The University encourages all community members to take reasonable and prudent actions to prevent or stop an act of sexual misconduct. Taking action may include direct intervention when safe to do so, enlisting the assistance of friends, contacting law enforcement, or seeking assistance from a person in authority. Community members who choose to assist under these circumstances will be supported by the University and protected from retaliation. The University provides mandatory bystander training through Bringing in the Bystander® for all entering students. Anyone interested in having an additional training session should contact the Director of Health Promotion, Jan Kaufman at jkaufman@wlu.edu.

# E. Reporting Considerations

## 1. Timeliness of Report, Location of Incident

Complainants and third-party witnesses are encouraged to report sexual misconduct as soon as possible in order to maximize the University's ability to respond promptly and effectively. However, there is no time limit on reporting violations of this policy. If the respondent is no longer a student or employee, the University may not be able to take disciplinary action against the respondent, but it will still seek to meet its Title IX obligation by providing support for a complainant and taking steps to end the harassment, prevent its recurrence, and address its effects.

An incident does not have to occur on campus to be reported to the University. Off-campus conduct that occurs in connection with University programs or events may also be covered, as may off-campus conduct that may have a substantial effect on the complainant's on-campus life and activities, may pose a threat or danger to the members of the W&L community, or may adversely impact University interests.

## 2. Amnesty for Personal Use of Alcohol or Other Drugs

The University seeks to remove any barriers to reporting. It is in the best interest of this community that all individuals who have been the subject of sexual misconduct report the behavior to University officials, and that witnesses share what they know. To encourage reporting, an individual who reports sexual misconduct, either as a complainant or a third-party witness, will not be subject to disciplinary action by the University for his or her own personal consumption of alcohol or drugs at or near the time of the incident, provided that any such violations did not and do not place the health or safety of any other person at risk.

## 3. Statement Against Retaliation

Retaliation is a violation of University policy and will result in disciplinary action. See Section V. (G) above for more information.

## 4. False Reporting

The University takes the validity of information very seriously, as a charge of sexual misconduct may have severe consequences.

A complainant who makes a report that is later found to have been intentionally false or made maliciously without regard for truth may be subject to disciplinary action and may also violate state criminal statutes and civil defamation laws. This provision does not apply to reports made in good faith, even if the facts alleged in the report are not substantiated by an investigation.

Similarly, anyone who is later proven to have intentionally given false information during the course of an investigation or disciplinary hearing may be subject to disciplinary action.

# 5. Protection of Minors and Mandatory Reporting of Suspected Child Abuse

Under Virginia law, any persons employed by a private institution of higher education who, in their professional or official capacity, have reason to suspect that a child is an abused or neglected child, are required to report the matter immediately to child protective services. Under this policy and W&L's Protocol for Mandatory Reporting of Suspected Child Abuse/Neglect, the University also requires that the information be immediately shared with the Director of Campus Safety so that the University can ensure timely compliance with this law and enhance the protection of children.

The University will report all suspected child abuse and neglect, including sexual assault, to law enforcement and/or to the Virginia Department of Human Services. The toll-free child abuse and neglect hotline is 800.522.7096.

The University intends to act quickly regarding all suspected child abuse. For the purposes of this reporting obligation, a child is any individual under the age of 18, and the suspected abuse may involve physical, sexual, or other forms of abuse or neglect, regardless of the identity of the suspected perpetrator. The duty to report is triggered by reasonable suspicion or belief. There is no requirement that you have actual evidence of abuse, nor is it the responsibility of any employee, student, or volunteer to investigate suspected child abuse. This is the role of child protective services and law enforcement authorities, who are best positioned to do so.

A report should be made as follows:

- If a child is in immediate danger, call the police (911).

- If there is no immediate danger, call W&L Office of Public Safety at 540.458.8999

This individual will assist in making the mandated child protective services report to:

- Local Department of Social Services: Rockbridge-Buena Vista-Lexington Area: 540.4637143
- Virginia Department of Social Services' toll-free child abuse/neglect hotline: 800.552.7096

In the event that the abuse was not alleged to have occurred in Virginia, Public Safety can help identify the correct jurisdiction for reporting.

# X. Interim Measures

## A. Overview

Upon receipt of a report of sexual misconduct, the University will impose reasonable and appropriate interim measures designed to eliminate the reported hostile environment, prevent its recurrence, and remedy its effects. The University will maintain consistent contact with the parties to ensure that all concerns of safety and emotional and physical well-being are being addressed. Interim measures may be imposed regardless of whether formal disciplinary action is sought by the complainant or the University in order to ensure the preservation of the complainant's educational, work or volunteer experience and the overall University environment.

A complainant or respondent may request separation or other protection, or the University may choose to impose interim measures at its discretion to ensure the safety of all parties, the broader University community, and/or the integrity of the investigative and/or resolution process.

All individuals are encouraged to report concerns about the failure of another individual to abide by any restrictions imposed by an interim measure. The University will take immediate action to enforce a previously implemented measure. The University can impose disciplinary sanctions for failing to abide by a University-imposed measure. For employees or volunteers, discipline will be handled by the Executive Director of Human Resources. For students,

discipline will be handled by the Vice President for Student Affairs and Dean of Students.

# B. Range of Measures

The University, at its discretion, will implement interim measures. Potential remedies, which may be applied to the complainant and/or the respondent to the extent reasonably available and warranted by the circumstances, include:

- Access to counseling services and assistance in setting up initial appointment, both on and off campus
- Imposition of an on-campus no-contact directive
- Rescheduling of exams and assignments
- Providing alternative course-completion options
- Change in class schedule, including the ability to transfer course sections or withdraw from a course without penalty
- Change in work schedule or job assignment
- Change in student's University-sponsored or University-controlled housing
- Assistance from University support staff in completing housing relocation
- Limit of an individual's or organization's access to certain University facilities or activities pending resolution of the matter
- Voluntary leave of absence
- Providing an escort to ensure safe movement between classes and activities
- Providing medical services
- Providing academic support services, such as tutoring
- Interim administrative leave of absence
- Any other remedy that can be tailored to the involved individuals to achieve the goals of this policy.

# C. University-Imposed Interim Administrative Leave of Absence

If the Title IX Coordinator, after consultation with the Vice President of Student Affairs and Dean of Students, Director of Public Safety, and others, as advisable, decides at any point that the health and safety of a student or of the community is at stake, an interim administrative leave of absence may be

imposed on a student who is suspected of violating this policy. In addition, interim administrative leave of absence may be used to preserve University property; pursue an investigation and/or hearing; and prevent disruption of, or interference with, the normal operations of the University. Interim administrative leave of absence will be used for short periods of time pending resolution of a report, and assumes no determination of responsibility.

During an interim administrative leave of absence, a student may be denied access to University housing, which includes Residence Halls, Theme Houses, and Greek Housing, and/or University campus or programs. As determined appropriate by the Title IX Coordinator (or designee), this restriction includes classes and/or all other University activities or privileges for which the student might otherwise be eligible.

At the discretion of the Title IX Coordinator, and with the approval of, and in collaboration with, the appropriate Dean(s), alternative coursework options may be pursued to ensure as minimal an impact as possible on the respondent.

Similarly, to protect the health and safety of the community, the University may impose interim administrative leave with pay for any employee at the discretion of the appropriate Co-Chair for the Investigation and Review Officers. (See http://go.wlu.edu/complaints_nonstudents). Such leave will be structured at the University's discretion.

# XI. Title IX Review, Investigation, and Resolution for Complaints against Students

Although a report may arrive through many sources, the University is committed to ensuring that all reports are referred to the Title IX Coordinator, who will ensure consistent application of the policy to all individuals and allow the University to respond promptly and equitably to eliminate the harassment, prevent its recurrence, and eliminate its effects.

In addition to the Title IX Coordinator, employees who may assist in the investigation and resolution of cases could include staff from the Office of the Dean of Students, Public Safety, and any other individuals deemed necessary

to resolve a matter. Disclosure will be limited to a small circle of individuals who need to know in order to implement procedures.

# A. Overview of Procedural Options

Upon receipt of a report, the University will conduct an initial Title IX assessment. The goal of this assessment is to provide an integrated and coordinated response to reports of sexual misconduct. The assessment will consider the nature of the report, the safety of the individual and of the campus community, the complainant's expressed preference for resolution, and the necessity for any interim remedies or measures to protect the safety of the complainant or the community.

Following this assessment, the University may 1) seek a remedies-based resolution that does not involve disciplinary action against a respondent; or, 2) initiate an investigation to determine if a Student Faculty Hearing Board hearing is warranted. The goal of the investigation is to gather all relevant facts and determine if there is sufficient information to support a charge against a respondent.

Each resolution process is guided by the same principles of fairness and respect for all parties. All individuals who violate these standards will be held accountable for their behavior through a process that protects the rights of both the complainant and the respondent. Resources are available for complainants and respondents to provide support and guidance throughout the investigation and resolution of the complaint.

# B. Title IX Assessment

The University will conduct an initial Title IX assessment, considering the complainant's interest and expressed preference for manner of resolution. Where possible and as warranted by an assessment of the facts and circumstances, the University will seek action consistent with the complainant's request.

As part of the initial assessment of the facts, the University will:

- Assess the nature and circumstances of the allegation
- Address immediate physical safety and emotional well-being

- Notify the complainant of the right to contact law enforcement and seek medical treatment
- Notify the complainant of the importance of preservation of evidence
- If applicable, enter the report into the University's daily crime log
- Assess the reported conduct for the need for a timely warning under the Clery Act
- Provide the complainant with information about on- and off-campus resources
- Notify the complainant of the range of interim measures and remedies
- Provide the complainant with an explanation of the procedural options, including remedies-based resolution and disciplinary resolution
- Assess for pattern evidence or other similar conduct by respondent
- Discuss the complainant's expressed preference for manner of resolution and any barriers to proceeding
- Explain the University's policy prohibiting retaliation.

The initial review will proceed to where a reasonable assessment of the safety of the individual and of the campus community can be made, and where the University has sufficient information to determine the best course of action.

At the conclusion of the Title IX Assessment, the Title IX Coordinator, in coordination with others as necessary, will determine the appropriate manner of resolution, which may include remedies-based actions or the initiation of an investigation to determine if a Student Faculty Hearing Board hearing is warranted. The Title IX Coordinator will determine the appropriate method of resolution. Any individual wishing to explore alternative dispute-resolution methods is encouraged to discuss these options with the Title IX Coordinator.

The determination as to how to proceed will be communicated to the complainant in writing. Depending on the circumstances and requested resolution, the respondent may or may not be notified of the report or manner of resolution. A respondent will be notified when the University seeks action that would impact a respondent, such as protective measures that restrict the respondent's movement on campus or the decision to involve the respondent in remedies-based resolution.

# C. Complainant Autonomy and Request to *Not* Proceed

The University will seek action consistent with the complainant's request where possible. Where a complainant makes a report but requests that a name or other identifiable information not be shared with the respondent or that no formal action be taken, the University will balance this request with its dual obligation to provide a safe and non-discriminatory environment for all W&L University community members and to remain true to principles of fundamental fairness that require notice and an opportunity to respond before action is taken against a respondent.

In the event that a complainant does not wish to proceed with an investigation or a Student Faculty Hearing Board hearing, the Title IX Coordinator will determine, based on the available information, including any investigative report, whether the investigation or Student Faculty Hearing Board hearing should nonetheless go forward.

In making this determination, the University will consider a range of factors, including:

- Whether the complainant has requested confidentiality;
- Whether the complainant wants to participate in an investigation or Student Faculty Hearing Board hearing;
- The severity and impact of the conduct, including whether a weapon was used;
- Whether the complainant is a minor under the age of 18;
- Whether the respondent has a pattern of similar conduct;
- Whether the respondent threatened further violence or other violence against the victim or others;
- The existence of independent evidence; and,
- The extent of prior remedial methods taken with the respondent.

The University will take all reasonable steps to respond to the complaint consistent with the request for confidentiality or request not to pursue an investigation, but its ability to do so may be limited based on the nature of the request by the complainant. The University will assess any barriers to proceeding, including retaliation, and will inform the complainant that Title IX prohibits retaliation and that the University will take strong responsive action

to protect the complainant. Where the University is unable to take action consistent with the request of the complainant, the Title IX Coordinator or designee will tell the complainant about the University's chosen course of action, which may include the University choosing to pursue action against a respondent on its own behalf. The University will not require a complainant to participate in any investigation or disciplinary proceeding. The course of action may also include steps to limit the effects of the alleged misconduct and prevent its recurrence that do not involve formal disciplinary action against a respondent or revealing the identity of the complainant.

# D. Remedies-Based Resolution

Remedies-based resolution is a non-disciplinary approach designed to eliminate a hostile environment without initiating potential disciplinary action against a respondent. Where the Title IX assessment concludes that remedies-based resolution may be appropriate, the University will take immediate and corrective action through the imposition of individual and community remedies designed to maximize the complainant's access to the educational, extracurricular, employment or volunteer activities at the University and to eliminate a hostile environment. Examples of protective remedies are provided in Section X: Interim Measures. Other potential remedies include targeted or broad-based educational programming or training, supported direct confrontation of the respondent, and/or indirect action by the Title IX Coordinator or the University. Depending on the form of remedies-based resolution used, it may be possible to maintain anonymity.

The University will offer mediation for appropriate cases, but it will not compel a complainant to engage in mediation, to directly confront the respondent, or to participate in any particular form of remedies-based resolution. Mediation, even if voluntary, may not be used in cases involving sexual assault.

The decision to pursue remedies-based resolution will be made when the University has sufficient information about the nature and scope of the conduct, which may occur at any time. Participation in remedies-based resolution is voluntary, and a complainant can request to end remedies-based resolution at any time.

The Title IX Coordinator will maintain records of all reports and conduct referred for remedies-based resolution, which will typically be completed within 45 business days of the initial report.

# E. Investigation

Where the Title IX assessment finds that disciplinary action may be appropriate, the University will initiate an investigation. The University will designate an investigative team who has specific training and experience investigating allegations of sexual misconduct. The University will typically use a team of two investigators who have been specifically trained to review cases involving prohibited conduct. Any investigator must be impartial and free of any conflict of interest.

The investigative team will conduct the investigation in a manner appropriate in light of the circumstances of the case. It will coordinate the gathering of information from the complainant, the respondent, and any other individuals who may have information relevant to the determination. It will also gather any available physical evidence, including documents, communications between the parties, and other electronic records as appropriate. The complainant and respondent will have an equal opportunity to be heard, to submit information, and to identify witnesses who may have relevant information. Witnesses must have observed the acts in question or have information relevant to the incident; they cannot be participating solely to speak about an individual's character.

The investigation is designed to provide a fair and reliable gathering of the facts. It will be thorough, impartial, and fair, and all individuals will be treated with appropriate sensitivity and respect. As described in the Privacy and Confidentiality section, the investigation will be conducted in a manner that respects individual privacy concerns.

The University will seek to complete the investigation within 30 business days of receiving the complaint, but this time frame may be extended depending on the complexity of the circumstances of each case. At the request of law enforcement, the University may agree to defer its Title IX fact-gathering until after the initial stages of a criminal investigation. The University will nevertheless communicate with the complainant regarding Title IX rights, procedural options, and the implementation of interim measures to assure the

safety and well-being of all affected individuals. The University will promptly resume its Title IX fact-gathering as soon as law enforcement has released the case for review following the initial criminal investigation.

Information the University gathers during the review or investigation will be used to evaluate the responsibility of the respondent, to provide for the safety of the complainant and the University campus community, and to take appropriate measures to end the misconduct, prevent its recurrence, and address its effects.

The Title IX Coordinator will retain copies of all reports generated as a result of investigations. The University will keep these records confidential to the extent permitted by law.

# 1. Review of Investigation Report

At the conclusion of the investigation, the team will prepare a written report that summarizes the information gathered and synthesizes the areas of agreement and disagreement between the parties and any supporting information or accounts. The team will review all facts gathered to determine whether the information is relevant and material to the determination of responsibility given the nature of the allegation. The investigative team will also assess the credibility of the witnesses and evidence. In general, the team may redact information that is irrelevant, more prejudicial than probative, or immaterial. The team may also redact statements of personal opinion, rather than direct observations or reasonable inferences from the facts, and statements as to general reputation for any character trait, including honesty.

Before the team finalizes the report, it will give the complainant and respondent the opportunity to review their own statement and, as permitted by FERPA, a summary of other information collected during the investigation, including the statements of the other party and any witnesses. The complainant and respondent may submit any additional comments or request further investigation from the investigative team.

After giving those parties the opportunity to comment on the report, the team will submit the report to the Chair of the Student Faculty Hearing Board.

# 2. Determination to Proceed to Student Faculty Hearing Board

Based on the investigation report, the Student Faculty Hearing Board Chair will then determine whether to formally charge the respondent and will notify the parties. Absent extenuating circumstances, this decision will be made within 48 hours after receiving the investigation report.

The formal charge(s) will state the subject matter of the complaint ("Harassment," "Retaliation," and/or "Sexual Misconduct"), the name of the complainant, and the approximate date and/or timeframe for the alleged conduct. The formal charge need not include details on the sub-categories of behavior within each charge. Thus, for example, in a given case, and without elaboration on the face of the charge, a charge of Sexual Misconduct may be deemed to encompass Sexual Intercourse Without Consent, Sexual Contact Without Consent, and/or Sexual Harassment.

Charge for Conduct Unbecoming a Washington and Lee Student: A charge of "conduct unbecoming" may accompany a charge for Sexual Misconduct.

University-issued e-mail is the primary means of communication the University uses. The SFHB Chair may deliver notice of the charge by one or more of the following methods:

- In person by the SFHB Chair or designated University administrator;
- Mailed to the local or permanent address of the individual as indicated in official University records; or
- E-mailed to the individual's University-issued e-mail account.

Once a formal charge has been issued, the respondent will answer the charge as "Responsible," "No Contest," or "Not Responsible." If the respondent answers "Responsible" or "No Contest," the charge goes to the Student Faculty Hearing Board to determine an appropriate sanction. The respondent must answer the charge before or during the pre-hearing conference, which is held, absent extraordinary circumstances, seven calendar days after the issuance of the charging document.

If there is a formal charge(s), a complainant or respondent may have an Advisor of their choice (see Section H(3)) present at any meeting related to the disciplinary process.

# F. Student Faculty Hearing Board (SFHB)

The Student Faculty Hearing Board is the body that determines responsibility and, if warranted, administers sanctions and/or discipline against a respondent.

The four-member SFHB hearing panel will make a finding, by a preponderance of the evidence and majority vote, as to whether the respondent is responsible for conduct in violation of this policy.

## 1. Composition and Selection of the Student Faculty Hearing Board

The SFHB is composed of four student members, four faculty members, and one administrator. The administrator serves as Chair of the SFHB and is appointed by the Vice President for Student Affairs.

The chair manages the SFHB, administers the hearing process and schedules, and presides over each hearing, but does not participate in the deliberations and does not vote on matters before the SFHB.

Following the procedures outlined in the Student Faculty Hearing Board Procedures, the Executive Committee of the Student Body (EC) shall appoint four student members to a one-year term on the SFHB, and the University Provost shall appoint four faculty members to three-year, staggered terms on the SFHB. The members are trained to adjudicate cases of sexual misconduct.

Following a Notice of Charge, the SFHB Chair shall select and convene a hearing panel composed of five SFHB members: two student members, two faculty members, and the Chair. The remaining student and faculty members are alternates.

Each member of the Panel must be neutral and impartial. The complainant and respondent shall be informed of the Panel's composition at least 48 hours in advance of the hearing. Either party may object to the appointment of any member of the Panel, directing that objection to the Chair, and stating the basis for the objection. The Chair will make the final determination on a member's ability to serve on the Panel. Additionally, any Panel member who has reason to believe he or she cannot make an objective determination must recuse himself or herself from the process.

# 2. Hearing Procedures

During an SFHB proceeding, the complainant and respondent may each be accompanied by an Advisor of their choice (see Section H(3)).

The SFHB Chair will hold a pre-hearing conference with the parties and their Advisors to resolve evidentiary or other matters. Absent extenuating circumstances, this pre-hearing conference will be held within seven (7) calendar days of issuance of the charging document.

Hearings will be held in a timely manner; assuming no extraordinary circumstances, within fourteen (14) calendar days of issuance of the charging document.

All hearings are closed to the public. The complainant and the respondent have the right to be present during the hearing. Although both the complainant and respondent are entitled to be present throughout the hearing, a privacy screen will be erected unless both parties request otherwise.

Members of the Hearing Panel may question the complainant and respondent, question the investigators, and examine related information and evidence. They shall restrict their questions to matters that the Chair deems relevant to the specific case. The Chair may accept written questions from the respondent, complainant, or Advisors for consideration by the Panel. Both a complainant and respondent have the right to provide other information relevant to the investigation.

Notwithstanding the investigation, if information produced during the hearing discloses additional tangible evidence or witnesses with relevant information, the Chair may obtain that evidence or call those witnesses to testify.

SFHB hearings are confidential to protect the privacy interests of all involved and the integrity of the process and all persons involved in hearings are expected to maintain confidentiality.

At any time, the respondent may choose to agree to a finding of responsibility to some or all of the charged conduct.

After considering all of the relevant information, the SFHB hearing panel will make a finding by a preponderance of the evidence as to whether the respondent is responsible for conduct in violation of this policy. In all cases, at

least three Panel members must vote "responsible" for a finding of responsibility.

# 3. Imposition of Sanction

If the respondent is found responsible, the SFHB hearing panel will impose a sanction designed to eliminate the misconduct, prevent its recurrence, and remedy its effects, while supporting the University's educational mission and Title IX obligations. Sanctions or interventions may also serve to promote safety or deter individuals from similar future behavior.

The SFHB is responsible for determining the appropriate sanction. In reaching this determination, it will provide the complainant, the respondent, and other affected parties, as appropriate, an opportunity to submit a written impact statement for consideration.

At least three Panel members must vote in favor of the imposition of each sanction or combination of sanctions. The Panel shall determine the appropriate sanction (or combination of sanctions) as contained in the Sanction Guideline Matrix.

## a. Sanction Guideline Matrix

| Prohibited Behavior | Range of Sanctions |
| --- | --- |
| Non-Consensual Sexual Intercourse | Dismissal |
| Non-Consensual Sexual Contact<br>Non-Physical Sexual Harassment<br>Sexual Exploitation<br>Stalking<br>Dating Violence<br>Domestic Violence<br>Retaliation | Dismissal<br>Suspension<br>Probation<br>Community Service<br>Educational/Counseling Consultation |

# 4. Notice of Outcome

Immediately upon reaching a finding, the SFHB Chair will notify the parties orally of the outcome and, within 36 hours of the decision, shall also provide to the parties a copy of the written SFHB hearing report.

The Chair will inform the respondent of any sanctions, the date by which the requirements must be satisfied (if applicable), and the consequences of failure to satisfy the requirements. The Chair also will inform the complainant of any sanctions that directly relate to the complainant or are required by federal law to be disclosed to the complainant in the case of certain criminal sexual offenses covered by the Campus Security Act, including sexual assault, domestic/dating violence, and stalking.

The Chair will also provide each party with an outcome letter containing their appeal options.

The University may also notify appropriate University officials, as necessary to implement the outcome and/or sanctions.

A public notice will be posted that includes the nature of the conduct and each charge for which the party was found responsible or not responsible. If there is a finding of responsibility, the public notice will include the sanction imposed for the charge. The Office of the Vice President for Student Affairs will maintain copies of all public notices for 10 years. During that period, the notices will be available upon request.

# G. Appeal

Either party may appeal the outcome of the matter to the University Board of Appeals, in accordance with the policies that apply to that body, within 72 hours of receipt of the written SFHB hearing report.

# H. Additional Considerations for Complaints against Students

## 1. Time Frames for Resolution

Washington and Lee will make every effort to successfully resolve all reports within 60 days. All time frames expressed in this policy are meant to be

guidelines rather than rigid requirements. Circumstances may arise that require the extension of time frames, including extension beyond 60 days. Such circumstances may include the complexity of the allegations, the number of witnesses involved, the availability of the parties or witnesses, the effect of a concurrent criminal investigation, any intervening school break or vacation, or other unforeseen circumstances.

In general, a complainant and respondent can expect that the process will proceed according to these time frames:

- An investigation will be completed within 30 business days of receiving the complaint.
- The SFHB Chair will decide whether to charge the respondent 48 hours after receiving the investigation report.
- The pre-hearing conference will be held seven (7) calendar days after formal charge.
- The SFHB hearing will be held fourteen (14) calendar days after formal charge.
- Notice of outcome will be provided orally immediately upon reaching a finding, and, within 36 hours of the decision a written copy will be provided.

If the investigation and resolution exceed this time frame, the University will notify all parties of the reason for the delay and the expected adjustment in time frames. It will make its best effort to complete the process in a timely manner by balancing principles of thoroughness and fundamental fairness with promptness. All parties involved are entitled to periodic status updates on the progress of the complaint and any subsequent appeals.

## 2. Group Infractions

When members of a student group, an organization, or a team, or individuals acting collusively act in concert in violation of this policy, they may be charged as a group or as individuals, and an investigation may proceed against the group as joint respondents or against one or more involved individuals as appropriate given available information and the circumstances.

A student group, an organization, or a team's officers and membership may be held collectively and individually responsible when violations of this policy by

the organization or its members take place at organization-sponsored events, have received the consent or encouragement of the organization or of the organization's leaders or officers, or were known or reasonably should have been known to the membership or its officers.

In any such action, individual determinations as to responsibility will be made and sanctions may be assigned collectively and individually in proportion to the involvement of each individual.

## 3. Advisors and Support Persons

**Advisor**: After a formal charge of conduct that violates this policy, the complainant and respondent have the right to be assisted by an Advisor, who can be either an Honor Advocate trained for this role or another member of the University community. In cases of sexual assault, domestic/dating violence, or stalking, a complainant or respondent may seek the advice and assistance of an Advisor of their choice, which can be an attorney, at their own expense. These other Advisors have not been trained by the University and are not University resources.

**Role of Advisor**: To advise the complainant or respondent of applicable procedures, and to advise the complainant or respondent on the specifics of a written appeal, if applicable. Advisors are also available to offer support and to provide information on additional resources. While advisors may accompany the complainant and respondent at meetings, they may not present evidence, question witnesses, or otherwise participate. Either party may request a brief recess to consult with their advisor, which will be granted at the discretion of the SFHB Chair. The University will not recognize or enforce agreements between the parties reached outside of these procedures.

## 4. Prior Sexual History

In general, a complainant's prior sexual history is not relevant and will not be admitted as evidence during an investigation. Where there is a current or ongoing relationship between the complainant and the respondent, and the respondent alleges consent, the prior sexual history between the parties may be relevant to assess the manner and nature of communications between the parties. As noted in other sections of this policy, however, the mere fact of a current or previous dating or sexual relationship, by itself, is not sufficient to

constitute consent. Any prior sexual history of the complainant with other individuals is typically not relevant and will not be permitted.

# 5. Pattern Evidence

Where there is evidence of a pattern or conduct similar in nature by the respondent, either prior to or subsequent to the conduct in question, regardless of whether there has been a finding of responsibility, this information may be deemed relevant and probative to the panel's determination of responsibility and/or assigning of a sanction. The determination of relevance will be based on an assessment of whether:

- The previous incident was substantially similar to the present allegation;
- The information indicates a pattern of behavior and substantial conformity with that pattern by the respondent; or
- The respondent was subject to a previous credible allegation and/or previously found responsible for a policy violation.

# 6. Consolidation of Investigation

The Title IX Coordinator may consolidate multiple reports against a respondent into one investigation if the evidence related to each incident would be relevant and probative in reaching a determination on the other incident.

# 7. Records

The Title IX Coordinator will retain records of all reports, allegations, and complaints, regardless of whether the matter is resolved by Title IX assessment, remedies-based resolution, or disciplinary proceeding. Complaints resolved by Title IX assessment or remedies-based resolutions are not part of a student's conduct file or academic record.

Affirmative findings of responsibility in matters resolved through the Student Faculty Hearing Board are part of a student's conduct record. Such records shall be used in reviewing any further conduct or in developing sanctions and shall remain a part of a student's conduct record. In general, the University will maintain records for the duration of the respondent's relationship with the University, and may retain them for no less than seven years following the

respondent's departure from the University. In allegations involving child abuse, the University may keep the records indefinitely.

If the SFHB does not find the respondent responsible, the student's conduct file or academic record will reflect the finding.

# XII. Title IX Review, Investigation and Resolution for Complaints against Faculty, Staff, and Other Non-students

Because the relationship of students, staff, and faculty to the University differ in nature, the procedures that apply when seeking disciplinary action necessarily differ in some respects. Each of the procedures, however, is guided by the same principles of fundamental fairness and respect for all parties, which require notice, an equitable opportunity to be heard, and an equitable opportunity to respond to a report. Procedures for Complaints Against Faculty, Staff, and Other Non-Students can be found online here: http://go.wlu.edu/OGC/ComplaintsAgainstNonStudents.

# XIII. Education and Prevention Programs

Washington and Lee University is committed to the prevention of sexual misconduct through education and awareness programs. It is also committed to the protection of minors and the prevention of child abuse. Throughout the year, the University offers educational programs to promote awareness of sexual harassment, sexual assault, dating and domestic violence, stalking and retaliation. Prevention programs include an overview of the University's policies and procedures, relevant definitions including prohibited conduct, discussion of the impact of alcohol and illegal drug use, effective consent, safe and positive options for bystander intervention, and information about risk reduction. Incoming first-year students and new employees receive primary prevention and awareness programming as part of their orientations. The University's Title IX Coordinator oversees the education and prevention

calendar and tailors programming to campus needs and climate. All educational programs include a review of resources and reporting options available for students, faculty, and staff.

[1]When used in this policy, a complainant refers to the individual(s) who has been the subject of sexual misconduct, regardless of whether that individual makes a report or seeks formal disciplinary action. A respondent refers to the individual(s) who has been accused of sexual misconduct. A third party refers to any other participant in the process, including a witness to the incident(s) and an individual who makes a report on behalf of someone else.

## Revision History

This policy has not yet been revised.