G. Robert Gage, Jr. (NY Bar No. 1901412)
Joseph B. Evans (NY Bar No. 5221775)
Gage Spencer & Fleming LLP
410 Park Avenue, Suite 900
New York, New York 10022
Tel:    (212) 768-4900
Fax:    (212) 768-3629
grgage@gagespencer.com
jevans@gagespencer.com

(Admitted *Pro Hac Vice*)

David G. Harrison (VSB 17590)
The Harrison Firm, P.C.
5305 Medmont Circle
Roanoke, Virginia 24018-1120
Tel:    (540) 777-7100
Fax:    (540) 777-7101
david@harrisonfirm.us

*Attorneys for Plaintiff John Doe*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| John Doe,<br><br>    Plaintiff,<br><br>  -against-<br><br>Washington and Lee University,<br><br>    Defendant. | **Civil Action No.:**<br>**6:14-cv-0052-NKM**<br><br>**Memorandum of Law in Support of Plaintiff's Motion to Compel** |

# Table of Contents

Table of Contents ................................................................................................................................. i

Table of Authorities............................................................................................................................ii

Background ........................................................................................................................................ 1

Argument ........................................................................................................................................... 4

    I.     W&L Cannot Establish the Requisite Attorney-Client Privilege.................................. 4

    II.    If the University's Lawyers' Involvement Was Necessary to Protect a Legal Interest, the Independence of the Processes to Which Plaintiff Was Subjected Was Fatally Compromised ........................................................................................... 7

    III.   The Mere Presence of W&L's Attorney on E-Mails Does Not Transform Them into Privileged Communications ........................................................................................ 9

    IV.   W&L's Acknowledged Destruction of Relevant Documents Constitutes Spoliation Which, Among Other Things, Vitiates Its Attorney-Client Privilege ..........................11

Conclusion........................................................................................................................................14

Table of Authorities

**Cases:**

*Commonwealth of Virginia v. Edwards*,
  235 Va. 499 (Supp. Ct. Va. 1988) ................................................................................................ 7

*Hawkins v. Stables*,
  148 F.3d 379 (4th Cir. 1998) ............................................................................................ 4, 5, 6, 10

*In re Grand Jury Proceedings*,
  727 F.2d 1352 (4th Cir. 1984) ..................................................................................................... 13

*Rambus, Inc. v. Infineon Technologies AG*,
  220 F.R.D. 264 (E.D. Va. 2004) ....................................................................................... 11, 13, 14

*Sheet Metal Workers Int'l Assoc. v. Sweeney*,
  29 F.3d 120 (4th Cir. 1994) ............................................................................................................ 7

*Silvesti v. Gen. Motors Corp.*,
  271 F.3d 583 (4th Cir. 2001) ....................................................................................................... 12

*United States v. Bollin*,
  264 F.3d 391 (4th Cir. 2001) .................................................................................................... 6, 10

*United States v. Jones*,
  696 F.2d 1069 (4th Cir. 1982) ....................................................................................................... 6

*United States v. Oloyede*,
  982 F. 2d 133 (4th Cir. 1993) ........................................................................................................ 7

*United States v. Zolin*,
  491 U.S. 554, 109 S. Ct. 2619 (1996) ................................................................................ 4, 11, 14

*Upjohn Co. v. United States*,
  449 U.S. 383, 101 S. Ct. 677 (1981) .............................................................................................. 7

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION TO COMPEL PRODUCTION

Plaintiff John Doe ("Plaintiff") moves to compel production of documents withheld on grounds of attorney-client privilege asserted by Defendant Washington and Lee University ("W&L") in connection with the above-referenced matter. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff, though undersigned counsel, respectfully moves for an order compelling W&L to produce those materials which are otherwise responsive to Plaintiffs' First and Second Document Requests and of central relevance and importance to the core issues presented in this litigation. For the reasons which follow, Plaintiff's motion should be granted.

## Background

As previously addressed on a motion to dismiss and ensuing judicial opinion, the instant case alleges claims concerning the nature of W&L's execution of processes which resulted in a determination that Plaintiff John Doe was responsible for sexual misconduct in the form of non-consensual sexual intercourse with another student at the University, a refusal to hear his appeal, and in his ensuing expulsion from the school. The determination was made by a panel of students and faculty called the Student Faculty Hearing Board (the "Hearing Board"). Under W&L's own written policies, the Hearing Board and its Chair are both required, among other things, to be independent of all partiality and conflict of interest in order that its obligation to sit in judgment might be fairly discharged. For reasons alleged in Plaintiff's First Amended and Verified Complaint, the Hearing Board did not execute its responsibilities in fidelity to the school's policies, and, by split decision, issued a finding that Plaintiff was responsible for that sexual misconduct.

In response, Plaintiff subsequently and properly requested that his appeal of

that determination be heard by a panel of the Appeals Board also established by school policy. Relying upon a summary report furnished by the Hearing Board concerning Plaintiff's case, the Appeals Board declined to hear Plaintiff's appeal and he was expelled. The instant action followed, and challenges these events.

In discovery, among other things sought, Plaintiff issued two document requests. On June 16, 2015, in response to Plaintiff's First and Second Document Requests (the "Requests"), W&L provided Plaintiff with a privilege log which included numerous critical documents concerning the workings of the Hearing Board and the Appeals Board in Plaintiff John Doe's disciplinary proceedings. The privilege log indicated that the University's General Counsel's Office lawyers played an important and overarching role in the processes described above which lie at the heart of Plaintiff's claims. Specifically, the University's privilege log suggests that its lawyers advised both the Hearing Board and the Appeals Board concerning John Doe's case before them.

In particular, W&L has withheld from production emails between its General Counsel, Leanne Shank, and the other key players in John Doe's case -- its Title IX Coordinator Lauren Kozak who was charged with independently investigating the Jane Doe complaints and furnishing an investigative report on which the decision to charge John Doe was made; the Chair of the Hearing Board Dean Tammi Simpson who was cloaked with exclusive authority to make the independent and impartial decision, based on Kozak's investigative report, whether or not to charge John Doe; and the head of the Appeals Board David Leonard who was authorized to accept or deny the hearing of appeals from the Hearing Board.

Additionally, W&L has withheld drafts of a report, supposedly created by the

Hearing Board at the request of Appeals Board head David Leonard to assist him in exercising his authority over whether or not to hear John Doe's appeal. On information and belief, these drafts included edits, redlining, rewrites, and other input from General Counsel Shank and Title IX Coordinator Kozak, even though they were not members of the independent Hearing Board nor of the Appeals Board.

Finally, the day after a redacted communication between Appeals Board head David Leonard and W&L General Counsel Shank, an email from Leonard instructs recipients to delete and destroy records of John Doe's case not only from the recipients' electronic in-boxes, but also from their delete folders themselves, an act which extinguished the possibility that these records would ever or, for that matter, could ever be produced.

These documentary irregularities reflect the abiding and extensive role of the University's lawyers in John Doe's case. Indeed, their legal advice was dispensed to the Hearing Board and Appeals Board in an environment in which the federal Department of Education ("DOE"), and specifically its Office of Civil Rights ("OCR") -- as outlined in Plaintiff's First Amended and Verified Complaint -- was closely monitoring the University among many other public and private institutions as part of its program to sanction those schools which did not adequately meet OCR's standards for addressing student allegations of sexual misconduct. Whether or not OCR's effort was driven by the politics of the "war on women" theme generally, the effect on W&L in this particular case was to cause the school to employ its lawyers to ensure that the proceedings against John Doe were conducted in a way that would spare the school from OCR sanctions. Deep concern about OCR, moreover, continues to hover over the school and, on information and belief, affects the manner in

3

which the case proceeds even now. The extensive role played by the University's lawyers in this matter, as reflected in the extensive redactions made by W&L in responding to Plaintiff's document requests, compromised the independent and impartial procedures promised by the school's written policies.

Thus, the instant motion addresses W&L's withholding from production, on attorney-client privilege grounds, numerous documents responsive to Plaintiffs' Requests. Over several months, the parties discussed W&L's privilege assertions and the documents withheld. While W&L supplemented its production to address somewhat the concerns articulated by Plaintiff, the school nevertheless continues to withhold from production the vast majority of documents it had claimed reflected protected privileged communications.

### Argument

Having asserted a privilege to withhold disclosure of information in its possession, W&L bears the burden to demonstrate the applicability of the attorney-client privilege it has asserted over these hundreds of documents. *See, e.g., Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). Traditionally, the attorney-client privilege is to be narrowly construed. *Id*. In the circumstances presented here, for several reasons, W&L has not, and cannot satisfy its burden, and the documents should be produced. Alternatively, at a minimum, we respectfully submit that the documents withheld by W&L should be reviewed *in camera* by the Court for their content. *See, e.g., United States v. Zolin*, 491 U.S. 554, 109 S. Ct. 2619 (1996).

I. <u>W&L Cannot Establish the Requisite Attorney-Client Relationship</u>

First, W&L cannot adequately establish that the requisite attorney-client relationship existed between the lawyers consulted and the "clients" they advised – the

4

Hearing Board, Appeals Board, and Title IX Coordinator investigating the underlying dispute. W&L cannot dispute that its own General Counsel's office attorneys were the lawyers purportedly consulted. Of course, the University is those lawyers' sole client, and the zealous representation of the University's interests is their ethical obligation. The two Boards and the Title IX Coordinator, established to provide independent services that should not implicate the University's interests, therefore could not have been clients of those attorneys in any appropriate way. *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (part of the Fourth Circuit's test for determining the existence of an attorney-client privilege is whether the purported holder of the privilege sought to become a client).

More importantly, however, the operative facts do not meet even the minimum criteria needed to ground a privilege claim. By way of example, a produced email reveals that the head of the Appeals Board panel, David Leonard, asked Hearing Board Chair, Dean Tammi Simpson, to help him discharge his obligations respecting John Doe's appeal by supplying him with a written, "point by point" explanation of the reasons for the Hearing Board's decision in John Doe's case. Nevertheless, W&L improperly withheld from production all drafts of the report generated.

Simpson and Leonard had no attorney-client relationship concerning this subject matter. *Hawkins v. Stables*, 148 F.3d at 383 (to qualify as privileged, a communication must be made to a lawyer, his or her subordinate, or someone acting as a lawyer in the context of the communication). Additionally, Simpson's report, submitted on behalf of the independent Hearing Board to the independent Appeals Board, addressed the historical record of John Doe's hearing. About this, there was no need for legal advice. The report's purpose was nothing more than to provide a full record to the independent

5

Appeals Board to help it decide whether or not grounds existed to hear an appeal, a decision which the Appeals Board was both exclusively authorized and fully qualified to make.

The reason for W&L's assertion of privilege over these drafts appears to be the fact that that report was, for some unknown reason, coordinated with, edited, and generally overseen by W&L's lawyers. Though the University had no discernible legitimate interest in the appealability of the Hearing Board's determination in this case, emails withheld from production reveal that Simpson coordinated her written response (to the request of Appeals Board head Leonard) both with General Counsel Shank and independent Title IX Coordinator Kozak, even though neither served on the Hearing Board or the panel which heard John Doe's case. W&L cannot seriously contend that the editing efforts of Shank and Kozak to shape the presentation of the Hearing Board record to the Appeals Board – an apparently ordinary request which on its face did not call for legal advice – constituted confidential attorney-client communications. In this way, the drafts in question lack the requisite predicate traditionally required for protecting the information from disclosure. *See, e.g., United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("the burden is on the proponent of the attorney-client privilege to demonstrate its applicability"). *See also United States v. Bollin,* 264 F.3d 391, 412 (4th Cir. 2001) ("the attorney client privilege protects only confidential communications for the purpose of seeking legal advice"); *Hawkins,* 148 F.3d at 383-84 (same).

Furthermore, even if the University somehow had a protectable interest in the operation of these supposedly independent processes, the inclusion of Title IX Coordinator Kozak would have waived any privilege that might otherwise apply. Kozak

6

was not a member of the Hearing Board and thus would not have any relevant contribution to the shaping of the Hearing Board's report to the Appeals Board. Finally, Kozak is not part of any management or "control group" necessary to assist the University protect its rights. *See generally Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677 (1981). It appears that W&L's decision to withhold the drafts of the report (and the emails between Simpson, Shank, and Kozak concerning the report) is predicated on the fact that W&L General Counsel Shank reviewed and perhaps commented on it. Yet, the disclosures of these drafts to Kozak, like disclosures to a third-party generally, operated to waive any privilege and defeat the privilege assertions by W&L. *See Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994) (noting that any voluntary disclosure to a third party waives the privilege); *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1993); *Commonwealth of Virginia v. Edwards*, 235 Va. 499, 509-10 (Sup. Ct. Va.) ("disclosure to others effectively waives the privilege 'not only to the transmitted data but also as to the details underlying that information'") (citation omitted).

> II. If the University's Lawyers' Involvement Was Necessary to Protect a Legal Interest, the Independence of the Processes to Which Plaintiff Was Subjected Was Fatally Compromised

If the investigation, trial, and appeal of John Doe implicated one or more legal interests of the University which its lawyers were attempting to protect, then the respective work of the Title IX Coordinator and of the two Boards was tainted. In conducting her investigation, the Title IX Coordinator was obligated to conduct her investigation free of conflict of interest, impartial, and fair. *See* Complaint, Ex. A at 37 (W&L's Interim Sexual Harassment and Misconduct Policy). Likewise, the Hearing Board was required to execute its functions independently and without partiality, conflict of

interest, or bias.  *See* Complaint, Ex. A at 38.  Finally, with respect to appeals of decisions of a hearing panel, W&L's Student Handbook establishes that the appeals process, too, be "completely impartial." *See* Amended Complaint, Ex. H, at 55 (Washington and Lee's 2014-2015 Student Handbook).  These requirements are statutory as well.  Title IX itself requires an "[a]dequate, reliable and impartial investigation of complaints."  Amended Complaint, Ex. J, at 9 (UNITED STATES DEP'T OF EDUCATION, OFFICE FOR CIVIL RIGHTS, Dear Colleague Letter dated April 4, 2011).  The extensive involvement of W&L's lawyers in the John Doe proceedings suggests activity coordinated with the Title IX Coordinator and these independent bodies which, if true, certainly violated these statutory and policy-driven requirements.

To the extent the University had an interest in this matter which necessitated legal representation, the involvement of its lawyers inappropriately injected the partiality of the University into these independent processes.  As the University has acknowledged, it perceived an institutional legal interest in the potential harm it could incur from the federal government's review of its conduct in this case.  Indeed, only two minutes after Plaintiff's Honor Advocate representative requested that Plaintiff's hearing be recorded electronically – a request that was consistent with, if not mandated by, federal guidelines (*see* Amended Complaint, Ex. J, at 12 ("[s]chools must maintain documentation of all proceedings, which may include written findings of facts, transcripts, or audio recordings")) – Hearing Board Chair Simpson consulted with the University's General Counsel Shank.  The ensuing emails were withheld from production on grounds of attorney-client privilege.  Following those emailed consultations, Simpson denied Plaintiff's request for electronic recording and, as a consequence, there is no transcript or audio of Plaintiff's hearing.

Thus, to the extent that the University determined that it had a protectable legal interest concerning its exposure to the federal Education Department's Office of Civil Rights which necessitated steps taken to protect itself, those steps, partial to the University and its interests, were inimical to Plaintiff. Indeed, those steps encroached on Plaintiff's right to an independent and impartial hearing, at a minimum influencing the denial of Plaintiff's request to record his hearing. Moreover, neither the existence of the University's legal concerns nor the role of those concerns in affecting the processes promised to Plaintiff by University policies was disclosed to him. Thus, the University's concern for its own interests injected an undisclosed partiality which may well have undermined the fairness of those processes. *Cf.* Amended Complaint, Ex. J, at 12 ("a school's investigation and hearing processes cannot be equitable unless they are impartial. Therefore, any real or perceived conflicts of interest between the fact-finder or decision-maker and the parties should be disclosed").

The school's policies guarantee that investigations, and Hearing and Appeals Board processes are to be conducted free from partiality. Yet, W&L nevertheless insists that Plaintiff should not be permitted to inspect the content of documents likely to reveal the extent to which the school's own legal interests influenced these independent processes. It is also fairly conceivable that any legal concerns about the federal government's oversight were grounded in gender bias. In such circumstances, the assertions of attorney-client privilege are misplaced, in that they serve only to hide the extent to which the University compromised the process to which Plaintiff was subjected, and also to keep from Plaintiff possible evidence of an unlawful gender bias that lies at the heart of his claims.

9

III. The Mere Presence of W&L's Attorney on Emails Does Not Transform Them into Privileged Communications

Additionally, W&L has withheld numerous documents as privileged where an attorney either was missing from the communication entirely, or was merely copied on it. For instance, W&L has withheld from production numerous emails between Title IX Coordinator Kozak and Hearing Board Chair Simpson which were "cc'd" to General Counsel Shank. However, these email chains included no input from Shank throughout, which implies that no requests for legal advice were made since any such requests, normally, would have called for or elicited a response. In that circumstance, the communications bear no indicia of fitting the type which warrants protection from disclosure on privilege grounds. *United States v. Bollin,* 264 F.3d at 412 ("the attorney client privilege protects only confidential communications for the purpose of seeking legal advice"); *Hawkins,* 148 F.3d at 383-84 (same). The attorney-client privilege cannot be invoked to protect from disclosure otherwise discoverable information where attorneys are merely "cc'd" or included as one of many recipients.

Even W&L's own description of the categories of supposedly privileged documents illustrates this deficiency with its assertions of privilege. For instance, there are at least seven sets of e-mails where W&L admits an attorney is neither the "author" nor "recipient" of the e-mail – four sets where an attorney is completely absent and three sets where an attorney is merely "cc'd." There are also more than fifty other series of e-mails where an attorney is listed as one of numerous recipients.

Furthermore, some redacted emails carry indications that reveal their potential for containing critical content. For instance, an email chain entitled "Notice to Complainant about Remedies" is dated in the October 2014 time period when it appears

10

Jane Doe was discussing potential "remedies" with Kozak. These documents predate Jane Doe's filing of a complaint and, thus, also predate Title IX Coordinator Kozak's investigation of the case. Accordingly, the withheld documents appear to contain vital content about what was said to Jane Doe at a time before she had even filed a complaint against Plaintiff. Whether such communications were proper, and whether an investigation and prosecution of Plaintiff was suggested by Kozak (or by Simpson who also provided redacted statements as part of the email chain) are among the questions that naturally come to mind.

The basis for the privilege assertion over these documents appears to be that the emails were "cc'd" to General Counsel Shank, even though Shank provided no written response in the entire chain and thus no legal advice in the document. This example, among many others, demonstrates an added dimension of importance of the content of the information in these documents that were withheld even though the lawyer recipient provided no input. Such documents are highly probative of issues that lay at the heart of Plaintiff's claims. In such circumstances, at a minimum, the documents withheld by W&L should be reviewed *in camera* by the Court for their content. *See, e.g., U.S. v. Zolin*, 491 U.S. 554, 109 S. Ct. 2619 (1996).

IV. W&L's Acknowledged Destruction of Relevant Documents Constitutes Spoliation Which, Among Other Things, Vitiates Its <u>Attorney-Client Privilege Assertions</u>

Finally, W&L's invocation of the attorney-client privilege is undermined by evidence that it destroyed relevant, requested information. *Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. 264 (E.D. Va. 2004). An email dated December 3, 2014, from David Leonard, the head of the Appeals Board which determined not to hear John Doe's appeal, reveals that Leonard instructed at least one member of the Appeals Panel to delete

11

all correspondence and documentation relating to their discussions and ultimate decision. Evidence suggests, moreover, that that instruction originated from W&L's lawyers. Specifically, W&L withheld from production on grounds of attorney-client privilege an e-mail dated December 2, 2014, the day before Leonard's emailed instructions, between Leonard and W&L's General Counsel Shank. Leonard's ensuing December 3 email provided specific directions for accomplishing the deletion of these documents. In it, he directed that the Appeals Board member not only delete that information, but also take the extra step of purging that correspondence and documentation from the "deleted items" sections in their computer. That extraordinary effort is noteworthy for the lengths taken to ensure that this information is unavailable to anyone.

Additionally, W&L's privilege log establishes that emails involving Shank, Simpson, and Kozak, produced from Kozak's files, were not produced by Shank and Simpson. Thus, relevant emails were apparently not available from two of the three sources, a fact which raises a fair inference that other relevant information was similarly purged and unavailable. In light of the instructions given by Leonard to take extra steps to delete information pertinent to John Doe's case, a fair question exists whether the absence of evidence from Shank and Simpson was part of an organized attempt to discard relevant evidence.

Having been accomplished after the hearing and appeals processes had been completed, these deletions were made at a time at which litigation should have been reasonably anticipated and preservation should have been mandatory. *See Silvesti v. Gen. Motors Corp.,* 271 F.3d 583, 591 (4th Cir. 2001) (the duty to preserve evidence "arises not only during litigation but also extends to the period before litigation when a party

12

reasonably should know that the evidence may be relevant to anticipated litigation… failure to do so constitutes spoilation"). By that time, Plaintiff had expressed to W&L officials multiple times of his desire to involve his own legal counsel, and W&L was aware that a private lawyer observed the Hearing Board proceedings. Nevertheless, when confronted, W&L contended that its destruction of documents accorded with its internal policy to delete all information except for the final versions of decisions and reports. Yet, that explanation not only ignores the fact that litigation could be reasonably anticipated, it also flouts federal policy applicable to W&L requiring the maintenance of documentary records relating to proceedings of this sort. *See* Amended Complaint, Ex. J, at 12 ("[s]chools must maintain documentation of all proceedings, which may include written findings of facts, transcripts, or audio recordings").

To the extent that Leonard's actions, or the apparent actions of Simpson or Shank, resulted from advice given by University lawyers, as it appears it did, it would fall under the crime/fraud exception to the attorney client privilege and nullify W&L's privilege claims. *Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. at 281-83 (commenting that legal advice given respecting spoliation is advice given for a malign purpose, is abusive of the attorney-client relationship, and is inconsistent with the principles behind the attorney-client privilege). The court in *Rambus* thus concluded that communications between lawyer and client respecting spoliation were not communications that should be protected, and noted further that "construing the crime/fraud exception to capture spoliation is fully consonant with the Fourth Circuit's instructions on how to apply the underlying privileges." *Id.*, 220 F.R.D. at 282-83 (citing, *inter alia*, *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984)).

In the circumstances present here, the withheld evidence concerning the apparent communications by W&L's lawyers about destruction of evidence should be produced. At a minimum, we respectfully submit that that evidence withheld by W&L should be reviewed *in camera* by the Court for a determination whether such communications related to planning for, or were made in furtherance of, spoliation. *Rambus*, 220 F.R.D. at 283; *cf. Zolin*, 491 U.S. at 570 (1996) (*in camera* review is appropriate upon a threshold showing that review is appropriate, such as evidence that legal advice enabled the commission of a crime or tort).[1]

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court order that the defendant produce all materials responsive to the Plaintiff's First and Second Request for Production of Documents, including those withheld from production on grounds of privilege.

Dated: December 30, 2015

/s/
G. Robert Gage, Jr.
Joseph Evans
Gage Spencer & Fleming LLP
410 Park Avenue, Suite 900
New York, New York 10022
(212) 768-4900
grgage@gagespencer.com
jevans@gagespencer.com

(Admitted Pro Hac Vice)

---

[1] We respectfully submit that learning the full circumstances behind the University's destruction of documents, including whether and why it was directed by the University's lawyers, is also important to the subsequent inquiry of an appropriate remedy for the spoliation.

14

/s/
David G. Harrison, Esquire (VSB #17590)
The Harrison Firm, P.C.
5305 Medmont Circle
Roanoke, Virginia 24018-1120
(540) 777-7100
david@harrisonfirm.us

Attorneys for Plaintiff John Doe