**Gills, Tricia**

| | |
|---|---|
| **From:** | Riley, Melissa Wolf |
| **Sent:** | Wednesday, October 14, 2015 3:06 PM |
| **To:** | 'Robert Gage'; Wood, R. Craig |
| **Cc:** | 'david@harrisonfirm.us'; 'Joseph Evans' |
| **Subject:** | RE: Discovery Issues |
| **Attachments:** | revised production.pdf; Novack Papers.pdf; W&LRevisedprivlog.pdf |

Bob,

I write to follow up on some issues discussed in our call on Monday, and addressed in your e-mail.

I have had an opportunity to go back through the documents included on our privilege log, paying particular attention to those in which none of W&L's in-house counsel (Leanne Shank, Jennifer Kirkland, and Jana Shearer) were an author or recipient. Every time that this occurs in our privilege log, it is due to the fact that the e-mail captured in the privilege log is merely the most recent communication in an e-mail string which initially included counsel in addition to those individuals. The document at Bates No. WL00001924-1925 is an example of this. If you read the e-mails in backward order, the very first (in time) e-mail is from Tammi Simpson, reporting the results of the SFHB hearing. Thereafter, Sidney Evans, Leanne Shank, Tammi Simpson, and Lauren Kozak engage in a privileged discussion, which is redacted. Then, Lauren Kozak and Tammi Simpson continue the conversation between themselves, which is not redacted. Because no new individuals outside of the privileged portion of the string are included, the privilege is not waived simply because counsel was not included in the final exchange. I hope that this explanation will allay some of your concerns about the documents included in the privilege log, but I am happy to discuss further if you would like.

During my review, I did notice a few documents that fall into the category explained above, but which were inadvertently withheld completely, instead of redacted, or were redacted, but portions of which should not have been redacted. I have gone back and revised those documents, and attach those as a supplement to our prior production. Specifically, the following 7 documents have been revised, and are attached with redactions:

Bates Range
WL0002056-2057 (Previously withheld)
WL0002072-2074 (Previously withheld)
WL0003934 (Previously withheld)
WL0003954-3955 (Previously redacted)
WL0003956-3957 (Previously redacted)
WL0004109-4110 (Previously withheld)
WL0004111-4112 (Previously withheld)

I also looked into the point-by-point analysis that David Leonard requests from Tammi Simpson, which we discussed in our call the other day. You have been provided this document at WL0000837-842. It was not withheld.

As Craig explained on our call, the standard procedure is for all documents except the final decisions and investigative report regarding the SFHB and appeal process to be collected and discarded upon completion of the hearing. This is the likely explanation for your concern that certain e-mails between multiple document custodians have been produced by one document custodian but not others. Simply stated, we collected and produced or logged what is in the possession of the document custodians; if duplicate copies from other custodians have not been produced, it is likely because they no longer exist. We do not agree with your contention that W&L should have been on notice that litigation was forthcoming at that point in time, and therefore should have put a litigation hold on those communications, because the SFHB has heard many cases, and this is the first time that litigation has ensued.

1

EXHIBIT B

We also disagree with your assertion that the Title IX Investigator, SFHB and appeal board are independent entities who are not entitled to seek guidance from university counsel. These entities do not exist separate and apart from W&L; although the investigation and decisions that they reach on the cases they hear are made without assistance from counsel or others within the university, and are therefore "neutral and impartial," once the investigation is complete, and/or the decisions of the SFHB/appeal board are reached, the entities are entitled to seek counsel regarding the procedure to be followed and the written documents setting forth their findings so that they comply with applicable law, and those communications are protected pursuant to the attorney-client privilege and/or work product doctrine. That is what occurred in this case; as you can discern from the privilege log dates and descriptions, counsel played no role in the investigation and/or decisions made by the SFHB or appeal board; instead, counsel provided guidance and editing with respect to the communication of the investigation/decisions to the involved parties.

Finally, while we were speaking, you asked about David Novack's writings on sexual assault. We suggested that a subpoena would be the best way to obtain those, as they were not in our (nor W&L's) possession. We had actually asked David for a copy of those things some time ago, but had never received them. Then, out of the blue, he sent them to us yesterday. Now that they are in our possession, there is no need for you to go through the subpoena process. They are attached.

I hope that you will accept the attachments to this e-mail as a supplemental production. If you would prefer that we do a formal pleading, please let me know and we will do it. I have also attached an updated privilege log reflecting these changes.

Thanks,
Melissa

Melissa Wolf Riley
Counsel
McGuireWoods, LLP
310 4th Street N.E.
P.O. Box 1288
Charlottesville, Virginia 22902-1288
mriley@mcguirewoods.com
434.977.2598
434.980.2275 fax

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

**From:** Robert Gage [mailto:grgage@gagespencer.com]
**Sent:** Friday, October 09, 2015 4:57 PM
**To:** Wood, R. Craig
**Cc:** david@harrisonfirm.us; Riley, Melissa Wolf; Joseph Evans
**Subject:** Discovery Issues

Craig –

As you are probably aware, I spoke with Melissa yesterday regarding outstanding discovery issues. We agreed to speak further on Monday. In the meantime, I thought it would be helpful to outline our position with regard to certain attorney-client/work product privilege assertions by W&L.

To date, W&L has withheld production of many hundreds of pages of documents on grounds of attorney-client privilege or attorney work product. W&L bears the burden to demonstrate the applicability of the attorney-client privilege it has asserted over these hundreds of documents. *See, e.g., Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). Traditionally, moreover, the attorney-client privilege is to be narrowly construed. *Id.*

The withheld documents largely relate to communications between the University's General Counsel's office and two bodies which were required to be independent -- the Hearing Panel which judged the sexual misconduct charges leveled against Plaintiff Doe, and the Appeal Panel which decided whether or not to permit Doe to appeal the Hearing Panel's ultimate decision. In our view, those two bodies were independent of the University (the client of the

2

W&L General Counsel) and thus lacked the requisite attorney client relationship to ground W&L's assertion of privilege. For this and the additional reason that the documents withheld are likely to be highly probative of issues that lay at the heart of Plaintiff's claims, we ask that W&L reconsider its assertions of privilege and produce the documents.

By way of example, an email produced by W&L indicates that the head of the Appeal Panel, David Leonard, to assist him in his effort to discharge W&L's appeal policies, requested from one of the Hearing Panel members, Tammi Simpson, a "point by point" written explanation of the reasons for the Hearing Panel's decision in the case. Though there can be no argument that Simpson and Leonard had any attorney-client relationship, Simpson's written report was withheld from production on privilege grounds. Emails also withheld from production suggest that Simpson coordinated her written response with W&L's General Counsel Leane Shank and with W&L's supposedly independent Title IX Coordinator Lauren Kozak, even though neither served on the Hearing Panel. Any such report would be highly relevant to the adverse determinations made by both the Hearing Panel and Appeal Panel, as well as to issues raised in the action before the Court generally. It appears that W&L's decision to withhold the report (and the emails between Simpson, Shank, and Kozak concerning the report) is predicated on the fact that W&L General Counsel Shank reviewed and perhaps commented on the report. While these facts raise substantial questions on the fairness and independence of the process to which Plaintiff was subjected, at a minimum they do not support any privilege claim. That report, and the various drafts of each of those persons leading up to its final version, should be produced.

We note that the W&L Interim Sexual Misconduct Policy requires "[e]ach member of the [Hearing Panel] must be neutral and impartial." Title IX further requires an "[a]dequate, reliable and *impartial* investigation of complaints." UNITED STATED DEP'T OF EDUCATION, OFFICE FOR CIVIL RIGHTS, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX* (2001) at 20 (emphasis added). With respect to appeals of decisions of a hearing panel, W&L's Student Handbook establishes that the appeal process, too, must be "neutral and impartial."

Furthermore, grounds exist to suspect that communications may have been destroyed. The discovery reveals that the head of the Appeal Panel, immediately following his communications with the University's lawyers that have been withheld from production, instructed the members of the Appeal Panel not only to delete all correspondence and documentation relating to their discussions and ultimate decision, but also to take the extra step to purge that correspondence and documentation from their respective "deleted items" sections in their computers. Specifically, an e-mail dated December 2, 2014, between David Leonard, W&L's Dean of Student Life and head of the Appeal Panel, and Leanne Shank, W&L's General Counsel – which was withheld from production – was followed the next day by Mr. Leonard's email to a member of the Appeal Panel with those directions for accomplishing the deletion of these documents. Coming post-hearing, these deletions were made at a time at which litigation should have been reasonably anticipated and preservation should have been mandatory.

Additionally, W&L's privilege log establishes that emails involving Shank, Simpson, and Kozak were not produced by Shank and Simpson. The fair inference is that emails concerning a disciplinary proceeding resulting in Plaintiff's expulsion were not available for production, having been deleted by those central participants. To the extent that Mr. Leonard's actions, or the apparent actions of Ms. Simpson or Ms. Shank resulted from advice given by University lawyers, it could well establish an exception to the attorney client privilege recognized by law as a further ground to defeat W&L's privilege claims.

Finally, W&L has provided a description of categories of documents over which it has asserted privilege which, itself, undermines the merits of its assertion. For instance, there are at least ten sets of e-mails where W&L admits an attorney is neither the author nor recipient of the e-mail. Additionally, there are at least three more sets of e-mails where an attorney is merely cc'd and W&L describes the attorney as being neither the author nor recipient of the e-mail. There are also more than fifty other series of e-mails where an attorney is listed as one of numerous recipients. The attorney-client privilege cannot be invoked to protect from disclosure otherwise discoverable communications where attorneys are merely "cc'd" or included as one of many recipients.

At a minimum, the inclusion of the University's counsel in communications with the supposedly independent Hearing Panel, Appellate Panel, and Title IX Coordinator suggests the existence of coordination which, we submit, destroys the claimed independence of the bodies which decided Plaintiff's case. Indeed, touching on the issue addressed above, W&L has asserted privilege and withheld from production various draft documents, neither signed nor transmitted by an attorney, which are supposed to be the product of a "neutral and impartial" process. These documents

3

appear to include drafts of letters to John Doe, documents relating to John Doe's Appeal, as well as drafts of John Doe's Hearing Board and Appeal decisions. The basis for W&L's withholding of these critical drafts from production appears to be that they were vetted and reviewed by the University's lawyers. The use of counsel in this way is insufficient to shield such documents from disclosure and, we submit, inappropriate for a supposedly independent process.

We look forward to discussing these, and other discovery issues, on Monday.

Bob

G. Robert Gage, Jr., Esq.
Gage Spencer & Fleming LLP
410 Park Avenue
New York, New York 10022
Tel: 212-768-4900
Fax: 212-768-3629
grgage@gagespencer.com

www.gagespencer.com

_____

This message contains confidential and privileged information. Dissemination or duplication of this material is prohibited. If you are not the intended recipient, please notify the sender and delete this email and any attachments thereto from your system. Thank you.

4